In the Matter of the Application of EDWARD D. SUGDEN, Appellant, for a Writ of Mandamus against JOHN N. PARTRIDGE, as Commissioner of Police of the City of New York, et al., Respondents.

1. CONSTITUTIONAL LAW — NEW YORK (CITY OF) — MANDAMUS — DETECTIVE SERGEANT SUMMARILY REDUCED TO PATROLMAN ENTITLED TO WRIT OF, REQUIRING POLICE COMMISSIONER TO REINSTATE HIM — L. 1901, CH. 466, § 290, NOT UNCONSTITUTIONAL.  Section 290 of chapter 466 of the Laws of 1901, providing for the maintenance of a bureau of detectives in the city of New York, to be selected and appointed by the police commissioner from the patrolmen or roundsmen of the police force, who, together with the policemen previously appointed or assigned to duty in the detective bureau and acting therein on the 1st day of April, 1901, shall be known as detective sergeants, with the same rank, authority and compensation as sergeants of police, and providing that they shall not be reduced in rank or salary, except in the manner provided by law for sergeants and other police officers, is substantially a re-enactment of an existing statute upon the subject (Consolidation Act, L. 1882, ch. 410, § 265, as amd. by L. 1884, ch. 180, § 4; re-enacted with no material changes in Greater New York charter, L. 1897, ch. 378, §§ 276 and 290), with the exception of the provision making the tenure of office permanent, except in case of removal in the manner provided by law for sergeants and other officers of the police force; the legislature has not thereby created a new position or office, or filled that position with new men, but has continued an old office, existing under prior statutes, with the persons who, at the time of the enactment of the statute in question,

filled such office under appointment or designation from city officers pre-viously designated by the legislature; the statute, therefore, is not in vio-lation of the provisions of section 2 of article 10 of the Constitution, and a patrolman who had been designated and assigned to duty in such detec-tive bureau, with rank of detective sergeant, prior to the enactment of such statute, and served as such until July 17, 1902, when he was sum-marily, and not in the manner provided by law for sergeants and other police officers, reduced in rank and remanded to duty as a patrolman, with reduced salary, is entitled to a writ of mandamus requiring the police commissioner to reinstate him as detective sergeant.

2. CONSTRUCTION OF STATUTE — IF STATUTE IS CAPABLE OF TWO CON-STRUCTIONS, ONE OF WHICH IS UNCONSTITUTIONAL, THE OTHER CONSTI-TUTIONAL, THE LATTER SHOULD BE ADOPTED.  If the provision of such statute, that those who were acting as detective sergeants on the 1st day of April, 1901, should not be reduced in rank or salary, except in case of removal, in the manner provided by law for sergeants and other officers of the police force, was intended to apply to those who were not in office at the time the act became a law, on April 22, 1901, or when it took effect, on January 1, 1902, the provision would have to be condemned as uncon-stitutional; but such provision may be construed to apply to those who continued in the position until the act took effect, and that construction should be adopted; since, where a statute is capable of two constructions, one of which is in harmony with the provisions of the Constitution and the other not, that should be adopted which will preserve the statute, if such construction is just as consistent with the legislative intent as the other.

3. DETECTIVE SERGEANT — STATUS AND DURATION OF APPOINTMENT OF, WHEN DESIGNATION NOT STATED TO BE TEMPORARY.  Unless the resolution of the police board, which assigned such patrolman to duty in the detective bureau with rank of detective sergeant, stated that such designation was temporary, his status is that of a detective sergeant and not that of a patrolman, and his designation may continue indefinitely, even during his life, unless he should be reduced to the grade of patrol-man in the manner provided by law for sergeants and other officers of the police force.

4. CONSTITUTIONAL LAW — STATUTE IN QUESTION NOT VIOLATIVE OF CIVIL SERVICE PROVISION OF THE CONSTITUTION (CONST. ART. 5, § 9). A mandamus to reinstate the petitioner cannot be denied upon the ground that the statute in question is in conflict with section 9 of article 5 of the Constitution, requiring that "appointments and promotions in the civil service of the state * * * including cities * * * shall be made according to merit and fitness, to be ascertained, so far as prac-ticable, by examinations, which, so far as practicable, shall be competi-tive;" since the statute did not create a new office and then fill it with detective sergeants, but the office had been created long before, and the petitioner had been designated to fill the office of detective sergeant before

the passage of the act, and his appointment without an examination was valid, where the civil service commission of New York city, although having power to do so, did not adopt a rule requiring the qualifications of a detective sergeant to be determined by a competitive examination until long after the petitioner had been appointed and after such statute had gone into effect.

*Matter of Sugden,* 78 App. Div. 644, reversed.

(Argued February 9, 1903; decided March 6, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 17, 1903, which affirmed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the commissioner of police of the city of New York to revoke an order remanding the petitioner from the bureau of detectives to patrol duty.

The facts, so far as material, are stated in the opinion.

*William C. De Witt* for appellant.    Section 290 of the revised charter was plainly within the power to create municipal corporations, and to enact, amend or repeal their charters, inherent in the people of the State and expressly conferred by their written Constitution.    It can in no sense be deemed an appointment to a city office by the legislature; nor does it in effect work such an appointment in any sense beyond the paramount power of the legislature to enact and alter charters of municipal corporations.    (Cooley's Const. Lim. [6th ed.] 226, 230; *People ex rel.* v. *Hoyt,* 7 Hun, 39; *People ex rel.* v. *York,* 35 App. Div. 330; *Matter of G. E. Ry. Co.,* 70 N. Y. 361; *People ex rel.* v. *Partridge,* 74 App. Div. 55; *Demarest* v. *Mayor, etc.,* 147 N. Y. 203; *Frees* v. *Ford,* 6 N. Y. 176.)    Section 290 is not repugnant to the civil service provision of the Constitution, because it must be found, as a matter of fact, that a competitive examination for promotion of patrolmen to detective sergeants was not practicable. (*People ex rel.* v. *Roosevelt,* 19 App. Div. 431; 5 App. Div. 169; *People ex rel.* v. *Burt,* 65 App. Div. 157; *People ex rel.* v. *Palmer,* 152 N. Y. 217.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondents. The designation and assignment of the relator, on February 18, 1901, "to the performance of detective duty to the Detective Bureau" was a mere detail and did not affect his status as a patrolman. (L. 1897, ch. 378; *People ex rel. v. Partridge,* 74 App. Div. 291.) If the statute, as amended, applies to all persons appointed under its provisions in office when it went into effect, in precisely the same manner in which it applies to those appointed after the date specified when it should go into effect, it follows that it is unconstitutional. (*People ex rel. v. Partridge,* 74 App. Div. 291.) Inasmuch as the amendment is prospective only and unconstitutional in so far as it relates to officers who were acting in the central office bureau of detectives or the headquarters squad on the 1st day of April, 1901, it does not protect such officers in their position, and they can be remanded by the police commissioner to patrol duty under the authority vested in him by section 290 of the charter of 1897. (*People ex rel. v. Partridge,* 74 App. Div. 291.) The effect of section 290 of the revised charter, so far as the officers who were either in the central office bureau of detectives or the headquarters squad on the 1st day of April, 1901, is concerned, was an appointment by the legislature to the permanent office of detective sergeant. (*People ex rel. v. Partridge,* 74 App. Div. 291.) If the relator's contention be correct that, by virtue of section 290 of the charter of 1901, he is a permanent detective sergeant, then the section in question is unconstitutional, as it is practically an appointment to a city office by the legislature, in defiance of section 2, article 10, of the State Constitution. (*People ex rel. v. York,* 35 App. Div. 390; *Rathbone v. Wirth,* 6 App. Div. 277; *People v. Draper,* 15 N. Y. 532; *People ex rel. v. M. P. Board,* 19 N. Y. 188; *People ex rel. v. Board of Metropolitan Police,* 26 N. Y. 316; *People v. Pinckney,* 32 N. Y. 377; *People ex rel. v. Albertson,* 55 N. Y. 50; *People ex rel. v. Howland,* 155 N. Y. 270.) Assuming the relator's contention to be correct, section 290 of the charter of 1901

violates section 9 of article 5, known as the civil service sec-
tion, of the State Constitution. (*People ex rel.* v. *Lyman*,
157 N. Y. 368; *People ex rel.* v. *Roberts*, 148 N. Y. 360;
*Chittenden* v. *Wurster*, 14 App. Div. 483; *Matter of Sweely*,
12 Misc. Rep. 175; *Matter of Ostrander*, 12 Misc. Rep. 476;
146 N. Y. 404; *People ex rel.* v. *Toby*, 153 N. Y. 381, 386;
*People ex rel.* v. *Gardiner*, 157 N. Y. 520; *People ex rel.* v.
*Coler*, 31 App. Div. 523; 157 N. Y. 678; *People ex rel.* v.
*Dalton*, 158 N. Y. 204; *Matter of Shaughnessy* v. *Fornes*,
73 App. Div. 462; 172 N. Y. 323.) Section 290 of the
revised charter changes the tenure of the position of a detec-
tive sergeant from one existing during the pleasure of the
police commissioner to one subject to the same rules and regu-
lations applicable to the other positions in the police depart-
ment, and while it does not create a new city office it estab-
lishes a distinct rank in the department entitling the officer to
increased pay. (*People ex rel.* v. *Partridge*, 74 App. Div.
291; *People ex rel.* v. *Bull*, 46 N. Y. 57; *People ex rel.* v.
*McKinney*, 52 N. Y. 374; *People ex rel.* v. *Crooks*, 53 N.
Y. 648; *People ex rel.* v. *Foley*, 148 N. Y. 683; *People ex
rel.* v. *Palmer*, 154 N. Y. 133; *People ex rel.* v. *Tierney*, 31
App. Div. 339; *People ex rel.* v. *Howland*, 155 N. Y. 270.)

HAIGHT, J. The facts are without substantial dispute. The
petitioner was duly appointed a patrolman of the uniformed
police force of the police department of the city of New York
on or about the 11th day of April, 1896, and continued in
the discharge of his duties as such patrolman until the 18th
day of February, 1901, at which time he was, by a resolution
of the board of police, designated and assigned to duty as a
detective of the detective bureau with rank of detective
sergeant, in which position he served until July 17th, 1902,
at which time the commissioner of police by an order remanded
him to duty as a patrolman. During the time that he served
as a detective he was allowed and paid the salary of a detec-
tive sergeant at the rate of $2,000.00 per annum, the amount
being certified by the municipal civil service commission each

month as the same became due. On being remanded to the position of patrolman he served upon the commissioner of police his protest in writing and demanded his reinstatement as a detective sergeant, and that his pay be certified as such. This being refused, he presented his petition for a mandamus, which the Special Term denied, and that order as we have seen has been affirmed by the Appellate Division, but not as a matter of discretion.

The statute under which the petitioner demands his reinstatement is the Laws of 1901 (Ch. 466, sec. 290). That statute is entitled, "An act to amend the Greater New York Charter" (Ch. 378 of the Laws of 1897, sec. 290), and so far as is material, provides as follows:

"The police commissioner shall maintain a bureau which shall be called the central office bureau of detectives, and shall select and appoint to perform detective duty therein from the patrolmen or roundsmen as many detectives as the said commissioner may from time to time determine necessary to make that bureau efficient. The patrolmen or roundsmen so selected and appointed, and the patrolmen or roundsmen heretofore selected, appointed or assigned to perform detective duty in the detective bureau, or in what is known as the headquarters squad, and who were acting in said bureau or squad on the 1st day of April, 1901, shall be known as detective sergeants, shall act as such in said bureau, and shall hold the same rank and shall be eligible for promotion in the entire police force in the city under the same rules and conditions applicable to the promotion of all other sergeants of police in said city, and shall not be reduced in rank or salary except in the manner provided by law for sergeants and other officers of the police force. These patrolmen or roundsmen known as detective sergeants on the 1st day of April, 1901, as aforesaid in the detective bureau shall have the power to draw and be paid the same pay as other sergeants of police."

It is contended on behalf of the respondents that this statute, in effect, creates a new office with a permanent tenure on the part of those occupying the position, and that it was

filled by persons designated by the legislature in violation of section 2, article 10 of the Constitution of the state, which provides that "All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose."

The consideration of this question renders it necessary to examine more fully the prior existing statutes upon the subject and the status of the petitioner thereunder.  Under the Consolidation Act (Laws of 1882, ch. 410, as amended by Laws of 1884, ch. 180) section 4 amended section 265 of the former act so as to read, as far as material, as follows:

"The police force shall consist of one superintendent of police.   *   *   *   Detective sergeants to the number authorized by law.   *   *   *   The board of police commissioners shall maintain and continue a bureau which shall be called the central office bureau of detectives.  The board shall select and appoint to perform detective duty as many patrolmen (not exceeding 40 in number) as said board of police may, from time to time, determine to be necessary to make this branch of the police force efficient.  The patrolmen so selected and appointed shall be called detective sergeants, and shall be assigned to duty at the central office bureau of detectives, and shall, while performing such detective duty, be vested with the same authority, and be entitled to receive and be paid the same salary each as sergeants of the police in the city of New York; but the board of police commissioners may, by resolution, reduce to the grade of patrolmen and transfer such detective sergeants or any number of them to perform patrol or other police duty, and when so transferred they shall only be entitled to receive and be paid the same rate of compensation each as patrolmen of the police in said city."

The provisions of the Consolidation Act of the city of New York were re-enacted in the Greater New York charter

(Ch. 378 of the Laws of 1897) and are to be found in sections 276 and 290. There are a few verbal changes, but none that are material or that affect the meaning or construction of the act. This act, as we have seen, was again amended by the statute under consideration which is claimed to be violative of the provisions of the Constitution. It will thus be seen that the office of detective sergeant was created and existed long before the adoption of the Greater New York charter, and that it was continued in the provisions of that act. The manner of selecting and designating the persons to fill the position remained the same, with the exception that under the last act the selection may be made from the roundsmen as well as from the patrolmen. Their duties remain the same, their pay the same, and the only substantial change effected by the legislation in question is to make their tenure of office permanent, except in case of removal, in the manner provided by law for sergeants and other officers of the police force. In other words, it places the position of detective sergeant on the same footing with other officers of the force. This may or it may not be wise legislation. It may be that the commissioner should have the power to enlarge or diminish the detective force at will, as the time and circumstances may require; but that is not a question for the determination of the courts. The act is clearly a continuation of an existing statute upon the subject, maintaining the same general scheme with the single exception alluded to, and as to that it harmonizes the position with that of the other offices of the police force by creating the same tenure of office. The legislature has not, therefore, created a new position or office and it has not filled that position with new men; but it has continued an old office existing under prior statutes with the persons who at that time filled the office under appointment or designation from city officers designated by the legislature. The act, therefore, is not, in our judgment, violative of the provisions of section 2, article 10 of the Constitution.

There is, however, one provision of the act which is subject to criticism. The act did not take effect until the 1st day of

January, 1902. The act contains a provision with reference to those who were acting as detective sergeants on the 1st day of April, 1901, to the effect that they shall be known as detective sergeants and shall not be reduced in rank or salary, except in the manner provided by law, etc. If this provision was intended to apply to those who were not in office at the time the act became a law, which was on the 22d day of April, 1901, or when it took effect in January, 1902, this provision would have to be condemned; for the legislature could not make detective sergeants out of persons who were not then members of the force. (*People ex rel. Waddy* v. *Partridge*, 172 N. Y. 305.) If a statute is capable of two constructions, one of which is in harmony with the provisions of the Constitution and the other not, that should be adopted which will preserve the statute, if such construction is just as consistent with the legislative intent as the other. And in order to give effect to the legislature's intent, words and phrases may be eliminated or supplied. We are inclined to the view that it was the intention that this provision should apply to those who continued in the position until this act took effect; but if this were not so, the objectionable provision could be eliminated, leaving all the other provisions of the act in force as applying to those persons filling the office at the time the act went into effect.

It is now suggested that the status of the petitioner was that of a patrolman and not that of a detective sergeant, and that his designation and assignment to duty as a detective sergeant was but temporary. The resolution adopted by the board of police, as we have seen, designated and assigned the petitioner to detective duty in the detective bureau, with the rank of a detective sergeant. It is not stated in the resolution that the designation was temporary. The police board is required to maintain a bureau of detectives. They are required to select and designate from the patrolmen a sufficient number to make the detective force efficient. The patrolmen so designated under the statute are vested with the same authority and entitled to receive the same salary as sergeants of police. A

designation so made may continue indefinitely even during the life of the person designated. True, he may be reduced to the grade of a patrolman at the option of the board, but this reserve power in the board does not operate to deprive the detective sergeant of his status as such officer during the time that he is invested with the powers and duties of the office.

It is also suggested that this act may be in conflict with the provisions of the Constitution, article 5, section 9, which provide that " Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." If the provisions of this act had created a new office and then filled it with detective sergeants, there might be some force in the suggestion, but, as we have shown, that was not the effect of the legislation. The office had been created long before, and the petitioner had been designated to fill the office before the passage of this act. It is not, therefore, apparent how the provisions of the act are in conflict with the civil service provisions of the Constitution. The record before us alleges, and it is not controverted, that the petitioner was duly appointed a patrolman. We assume, therefore, that he had complied with the requirements of the civil service act in force at that time. We do not understand that he submitted to any further examination for the promotion, but the civil service commission evidently thought that he was properly designated, for each month of his service the commission certified his pay as a detective sergeant at the rate of $2,000.00 per annum. The civil service provision of the Constitution further provides that laws shall be made to provide for the enforcement of the provision. Statutes have been enacted in compliance with this provision. A civil service commission has been provided for the state and a commission for each of the cities of the state. These commissions are required to classify the civil service, and they are empowered to deter-

mine the offices that shall be filled by competitive examinations, including promotions from one position to another. The civil service commission of the city of New York did not deem it practicable to determine the qualification of a detective sergeant by a competitive examination until the 10th day of May, 1902, long after the petitioner had been appointed to the position and after this act had gone into effect. There was not, therefore, any rule of the civil service commission in force requiring an examination of the petitioner at the time that he was designated to the position of detective sergeant, and consequently we think that his designation was valid. (*Chittenden* v. *Wurster*, 152 N. Y. 345, 362.)

The petitioner, as we have seen, was appointed or designated to fill the position in February, before the act was passed. He was in the office performing its duties when the act was passed and when it went into force, and continued in the position thereafter until the 17th day of July, 1902. He was, therefore, under the provisions of the act, one of the persons who could not be reduced in rank or salary except in the manner provided by law for other officers of the police force.

The order of the Appellate Division and that of the Special Term should be reversed and the motion of the petitioner for a writ of mandamus directing his reinstatement should be granted, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, MARTIN, VANN and WERNER, JJ., concur.

Order reversed, etc.