In the Matter of JOHN F. POWERS, Appellant, against OSCAR M. TAYLOR et al., Constituting the Civil Service Commission of the State of New York, et al., Respondents.

Third Department, November 16, 1955.

*John T. De Graff* and *John J. Kelly, Jr.,* for appellant.

*Jacob K. Javits, Attorney-General (Joseph H. Murphy* and *James O. Moore, Jr.,* of counsel), for respondents.

ZELLER, J. In this proceeding under article 78 of the Civil Practice Act, petitioner-appellant seeks (1) a determination that the provision of the Workmen's Compensation Law is unconstitutional which declares the positions of workmen's compensation referees to be in the exempt class of the classified civil service (L. 1950, ch. 526, § 1, amdg. Workmen's Compensation Law, § 150), and (2) an order directing defendants-respondents to classify these positions in the competitive class.

The provision of the New York State Constitution which petitioner-appellant claims has been violated by this statute is section 6 of article V which reads, in part: '' Appointments and promotions in the civil service of the state    *    *    *    shall be

made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ". The petitioner-appellant has alleged, *inter alia,* that " It is practicable to ascertain by competitive examination the merit and fitness of candidates for the position of Referee ". Special Term dismissed the petition on the ground that it fails to state facts which entitled the petitioner-appellant to relief. In our examination of the petition and such pertinent matters of which we take judicial notice we must determine whether Special Term was correct in this disposition of the matter.

To a large measure, the nature of the position of workmen's compensation referee may be found from legislative enactments. Although the Workmen's Compensation Law was adopted in 1913 and re-enacted in 1914 (L. 1914, ch. 41), the position of workmen's compensation referee was not established until 1921. In that year, the Legislature empowered the Industrial Commissioner, who was then charged with administration of the law, to appoint referees who were authorized to hear and determine claims for compensation. (L. 1921, ch. 50, § 19; L. 1921, ch. 642, § 2.) The law then specifically provided that " the decision of a referee on such a claim shall be deemed the decision of the industrial board   *   *   *   unless the industrial board, on its own motion or on application duly made to it, modify or rescind such decision."

In 1945, the administration of the Workmen's Compensation Law was reorganized. (L. 1945, ch. 74, § 21.) The name of the authority which determines claims for compensation was changed from that of " Industrial Board " to that of " Workmen's Compensation Board " and the latter was vested with all the quasi-judicial functions which the Workmen's Compensation Law required to be exercised. In addition, by adding section 150 to the Workmen's Compensation Law, the Legislature reaffirmed the status of referees by again authorizing them to hear and determine claims for compensation and providing that their decisions, unless modified or rescinded by the board, should be deemed decisions of the board.

Thus by 1945, it was firmly cemented into our law that the workmen's compensation referees were quasi-judicial officers, with power to hear and determine compensation claims and with the concomitant authority to preside over proceedings, arrange calendars, sift and evaluate evidence and render decisions on controverted claims. Five years later, the Legislature amended section 150 of the Workmen's Compensation Law by adding

several provisions. (L. 1950, ch. 526.) Among these is the provision, here claimed to be unconstitutional, which reads: '' All positions of referees now in existence or hereafter created shall be in the exempt class of the classified civil service ''. Shortly after this enactment and in conformity therewith, the Civil Service Commission adopted a resolution reciting that it deemed it impracticable to hold competitive or noncompetitive examinations for the position of workmen's compensation referee and classified all such positions as exempt from examination.

In view of the well-established nature and character of the duties of workmen's compensation referees, we are unable to conclude that the Legislature acted arbitrarily in exempting them and in impliedly determining that no examination supplies a practicable test of fitness for the position. Candidates for the position of workmen's compensation referee could be tested for their knowledge of rules of evidence and workmen's compensation law and for their familiarity with the nature of accidental injuries and medical terms. But, it seems to us, no objective test would be practicable to determine such personal qualities as fairness, patience, common sense and judgment all of which are necessarily essential to the position.

This legislative declaration did not change any long-standing or well-recognized policy of the Civil Service Commission in the classification of the position of workmen's compensation referee. As far back as 1921, when the title '' referee '' was first used, the Civil Service Commission placed all of them, then ten in number, in the exempt class and certified that competitive or noncompetitive examinations for said positions were not practicable. (N. Y. Legis. Doc., 1922, No. 26, p. 37.) In subsequent years, the commission granted applications for additional referees in the exempt class until by 1925 there were twenty-seven positions in the exempt class. But in 1932, the commission held a competitive examination for the position of workmen's compensation referee and several appointments were made from the list established. Prior to the legislative enactment of 1950, the number of referees had increased to fifty-one of whom twenty-six were in the exempt class, three in the competitive class and the balance were serving on a provisional basis and all were doing work of the same nature. Thus, the policy lacked consistency and was in need of the definitive direction supplied by the Legislature.

It is true, as alleged in the petition, that the Legislature held no hearings as to whether it was practicable to hold a competi-

tive examination for the position of workmen's compensation referee and made no express finding of impracticability. But where the nature and character of the duties of a position have themselves been well defined by the Legislature, we do not deem it essential that hearings be held to establish what the Legislature has already recognized. The finding of impracticability is necessarily implied in the exemption and need not be expressly stated. It is also true, as alleged by the petitioner-appellant, that the Civil Service Commission has determined it practicable to hold competitive examinations for unemployment insurance referees, motor carrier referees, motor vehicle referees and hearing officers. But these positions are not in their functions and importance essentially the same as workmen's compensation referees, or at least the Legislature and Civil Service Commission had the right to so determine.

*Matter of Andresen* v. *Rice* (277 N. Y. 271, 280), relied upon by petitioner-appellant, is not controlling here. There the Legislature had sought to exempt the whole State Police force from competitive examinations and the Court of Appeals said, per CRANE, Ch. J.: '' the wholesale classification *en masse* of an entire force, in view of past experience with such offices and positions, is contrary to the Constitution.'' Obviously, the duties of a whole police force are completely different from the quasi-judicial functions of workmen's compensation referees. The determination that examinations are practicable for the one certainly is no proof that they are for the other.

The Constitution contemplates that there are positions in the civil service of the State for which examinations are not practicable. (N. Y. Const., art. 5, § 6; *Chittenden* v. *Wurster,* 152 N. Y. 345, 358; *Matter of Keymer,* 148 N. Y. 219, 226.) It seems to us quite clear that the position of workmen's compensation referee is of such a nature that it was not arbitrary for the Legislature to determine that no examination, competitive or noncompetitive, would supply a practicable test of fitness.

The order should be affirmed, with $10 costs.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Order affirmed, with $10 costs.