■ In the Matter of JUDITH A. LEVITT, as Personnel Director of the City of New York, et al., Appellants, v CIVIL SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.— Yesawich, Jr., J. Appeal from a judgment of the Supreme

Court (Hughes, J.), entered April 14, 1988 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Civil Service Commission overturning petitioners' resolution reclassifying the position of deckhand from the competitive to the noncompetitive class of the civil service.

At issue is whether Supreme Court erred in concluding that respondent Civil Service Commission (hereinafter the Commission) had a rational basis for withholding its approval (see, Civil Service Law § 20 [2]) of petitioners' resolution reclassifying the position of deckhand as noncompetitive. The major tasks of a deckhand employed by petitioner City of New York to work ferries and ferry terminals, as determined by the city's Department of Personnel, are:

1. Operation of gates, gangplanks, aprons, bridges and lines;

2. Regulation of passenger and vehicular traffic;

3. Cleaning of vessels and terminal property and enforcement among passengers of departmental rules;

4. Loading and unloading of freight and other heavy manual labor; and

5. Service as lookout, rescue operations, firefighting, and fire and lifeboat drills.

In analyzing the approximate percentage of time spent on each group of tasks and the weighted importance of each, city job knowledge analysts found as follows:

| Major Task | Time Spent | Weighted Value |
| --- | --- | --- |
| 1. | 15% | 10% |
| 2. | 15% | 10% |
| 3. | 60% | 15% |
| 4. | 10% | 5% |
| 5. | less than 5% | 60% |

Other skills deemed beneficial but not required include rigging, first aid and seamanship skills.

Historically, deckhands have been in the competitive class. The current competitive examination, last conducted in 1979, is purely physical, involving strength, agility and swimming tests. Two of the city's analysts, the director of administration for the city's Bureau of Ferries and a ferryboat captain, favored a written examination, though the reading skills required of deckhands are minimal. On the other hand, Kurt Geisinger, the city's retained expert on employment testing, and Esther Juni, deputy city personnel director for examinations, expressed the view that a job-related competitive exami-

nation for the deckhand position could not be designed sufficient to yield a valid rank-ordered list of candidates.

At a public hearing held on the proposed reclassification, several speakers experienced in marine matters asserted that the importance to public safety of the emergency management and lookout functions of a deckhand merited competitive selection (concern was also registered over the possibility that political patronage would play a role in selection if a competitive examination is not utilized). The city's Department of Personnel maintained that minimum requirements of two years' experience as a deckhand or the equivalent and the ability to swim 25 yards would adequately protect public safety.

After being twice rejected by the Commission, petitioners instituted the present proceeding challenging its determination on four grounds: (1) the Commission applied too strict a standard, (2) the Commission's decision was inconsistent with title VII of the Civil Rights Act (42 USC § 2000 *et seq.*) and NY Constitution, article V, § 6, (3) it was based solely on a "strong presumption" in contravention of uncontroverted expert opinions, and (4) the Commission failed to state the facts or rationale relied upon. Supreme Court held that petitioners failed to carry the " 'heavy burden of proving the commission's determination arbitrary' " (quoting *Matter of Goodfellow v Bahou,* 92 AD2d 1085, 1086). Petitioners appeal.

We are persuaded that when the Commission concluded that petitioners had not made a "compelling case" for noncompetitive classification it was not using the word "compelling" in the legal sense but to indicate petitioners' failure to overcome the constitutional preference for competitive examinations (NY Const, art V, § 6; *see, Amico v Erie County Legislature,* 36 AD2d 415, 420, *affd* 30 NY2d 729). And, while the Commission's statement of the basis for its decision is considerably less than abundant, it does not foreclose fair judicial review *(cf., Matter of Montauk Improvement v Proccacino,* 41 NY2d 913, 914).

As to the merits, we are instructed that reference can be had to the manner in which other government units with similar responsibilities have been classified *(Matter of Grossman v Rankin,* 43 NY2d 493, 505). In this instance, we note that in their vital public safety-related duties, deckhands perform functions not unlike a police officer or firefighter, positions for which competitive examinations are required. Indeed, at the public hearing it was observed that even the largely unskilled position of city sanitation worker is filled by

competitive examination. The views of Geisinger and Juni were obviously discounted because of the limited significance given by them to the public safety features of the position. While there may be no practicable way to assess an applicant's ability to perform the more time-consuming and mundane tasks such as janitorial work, there is no suggestion that applicants cannot be evaluated to ensure selection of the strongest, swiftest and most agile rescuers or the most nautically knowledgeable so as to accommodate the very important public safety aspects of the position. That being the case, petitioners have failed to show any impediment to compliance with the job-relatedness requirements of title VII of the Civil Rights Act.

Judgment affirmed, without costs. Casey, J. P., Mikoll, Yesawich, Jr., Mercure and Harvey, JJ., concur.