In the Matter of RAND CONDELL, as President of the New York State Public Employees Federation, AFL-CIO, et al., Appellants, v THOMAS C. JORLING, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents.

Third Department, October 26, 1989

## APPEARANCES OF COUNSEL

*Richard E. Casagrande (Nancy L. Burritt* and *Jeffrey G. Plant* of counsel), for appellants.

*Robert Abrams, Attorney-General (John Q. Driscoll* and *Peter G. Crary* of counsel), for respondents.

## OPINION OF THE COURT

KANE, J. P.

In 1987, respondent Department of Environmental Conservation (hereinafter DEC) proposed the creation of three new leadership positions to manage the newly created Division of Hazardous Waste Remediation, i.e., Deputy Commissioner, environmental program director III and assistant environmental program director III. Under the proposal, DEC sought to have the Deputy Commissioner position placed in the exempt class of the civil service and the two other positions placed in the noncompetitive class and submitted these jurisdictional classification requests to the Civil Service Commission (hereinafter the Commission) for approval. Henry G. Williams, then the Commissioner of DEC, stated that the noncompetitive classification was warranted for the two latter positions because the duties involved policy formulation and as such were not amenable to competitive testing.

This proposal met with sharp criticism from the New York State Public Employees Federation, AFL-CIO (hereinafter PEF), the negotiating representative for the approximately 1,700 professional, scientific and technical workers in the employ of DEC. In a letter submitted to the Commission, PEF pointed out that comparable director positions within DEC have historically been in the competitive class and voiced concern that approval of a noncompetitive classification for these two positions would lead to the reclassification of other director positions and thereby work a "direct assault on the merit system". Notably, before the Commission commenced formal consideration of the proposal, DEC expanded its origi-

nal request and sought, in addition to the other relief originally requested, a change in the jurisdictional classification of 11 of the 16 other existing director positions from the competitive to the noncompetitive class. With the exception of the environmental program director III and director of environmental conservation operations positions, the reclassification was to take effect when the position was vacated by the currently serving director, at which time the position title was also to be changed to that of environmental program director III. This new request was submitted by Williams' successor, respondent Thomas C. Jorling, shortly after he took office, who stated that the request was based upon the heightened political climate in which DEC and the individual directors now operate. Specifically, in a letter to the Commission Jorling noted that:

"Division directors * * * are part of the policy-making structure of [DEC] and * * * often engage in independent policy development * * *. They manage major statewide programs, which are of very significant consequence to the State * * * and which carry significant national and international social, economic and legal policy implications.

"[They] represent the Commissioner, the Governor and the State on various * * * interstate, multi-state, national and international boards, commissions and compacts. Their roles in these organizations require, in addition to exercising proper judgment and tact, political awareness, sensitivity and insight in representing the positions and interests of [DEC] and the State of New York. * * *

"They are called upon to discuss legislation and sensitive projects with members of Congress and their staffs * * * [and] they serve in leadership positions in national organizations with significant influence over national environmental policy".

According to Jorling, in view of the highly political nature of these positions, the successful and effective director must possess a unique combination of judgment, tact, insight, sensitivity and temperament which could not be ascertained through a competitive examination. Once again, PEF voiced its opposition to the proposal, as did several incumbent DEC directors and other interested parties.

An informal, open hearing on the issue was held in October 1987. At the hearing, Jorling essentially advanced the same arguments set forth in his earlier letter, while advocates in opposition argued that (1) not enough documentation had been

submitted to establish that it was impracticable to test for the requisite skills on a competitive basis, (2) director positions had been successfully filled by way of competitive examination for up to 30 years, and (3) reclassification would adversely affect the opportunities for promotion within DEC itself to these positions. Also in opposition, a representative of staffing services for respondent Department of Civil Service (hereinafter DCS) indicated that in the past, examinations for director positions were held on an open-competitive basis evaluating training and experience and an oral test, and in some instances exams were held on a promotional basis utilizing oral tests. However, Robert Parrish, Director of Staffing Services for DCS, stated that judgment and sensitivity were skills that were not susceptible of determination through written or oral examination and that there was evidence that past oral examinations had not tested for the personal characteristics Jorling alleged were necessary for the position, i.e., political judgment, sensitivity, ability to engage in independent policy setting, tact and discretion. Parrish stated that such testing was instead limited to the ability to present ideas clearly and effectively, to reason clearly and make sound judgments, and to make satisfactory relationships with others. In opposition thereto, the record contains reports and internal memoranda prepared by the Commission staff which, with one exception, advised against reclassification primarily because of the long history of competitive exams for those positions.

According to an affidavit of respondent Walter D. Broadnax, the Commission's President, the Commission concluded after deliberations and upon the papers before it that the positions "require[d] the incumbents to utilize a special level of individual judgment, to formulate and administer policy in a politically sensitive area and to possess the highest level of leadership and management skills", which attributes could not practicably be determined by way of a competitive examination, and approved all the reclassification requests.

Thereafter, petitioners instituted this proceeding pursuant to CPLR article 78 in which, essentially, they argued that the Commission's determination permitting reclassification was contrary to Civil Service Law § 42 and NY Constitution, article V, § 6, and that DEC's reclassification request was a bad-faith effort to evade the constitutionally mandated merit and fitness requirements and tenure protections. Petitioners also challenged the rationality of the Commission's conclusion that the director positions involved policy making. For exam-

ple, the affidavit of petitioner Harry J. Hovey, Jr., Director of DEC's Division of Air Resources, stated that: "The Division Directors provide information and make recommendations to the Commissioner on policy matters, but we do not make policy. We develop the technical means to implement DEC policies made by the Commissioner consistent with gubernatorial and legislative mandates." However, Hovey did acknowledge that the directors were responsible for all political issues that arose from the implementation of DEC programs and did represent DEC's Commissioner and the Governor on various boards, commissions and compacts.

On the documents before it, Supreme Court concluded that there was substantial evidence before the Commission to support its conclusion that the director positions entailed "the formulation of policy * * * the representation of [DEC] at administrative hearings and proceedings at the state, national and international levels [and] the exercise of authority or discretion at a high level", and found it rational to conclude that, based upon the evidence, competitive examinations were not practicable. From the dismissal of their petition, petitioners appeal.

The statutory mandate for reviewing a determination of the Commission made after an informal hearing and upon documents before it is whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion (see, CPLR 7803 [3]). Case law instructs us that the historical test we must apply is whether petitioners sustained their burden to show that the underlying material upon which the Commission relied for its decision failed to supply a rational basis for its determination (see, Matter of Grossman v Rankin, 43 NY2d 493; Matter of Berkowitz v New York State Civ. Serv. Commn., 150 AD2d 978, lv denied 74 NY2d 610). This strict standard of review for determinations of the Commission set forth in Matter of Grossman v Rankin (supra) is still viable. However, that standard has recently been refined to require a more enlightened approach to sustain the Commission's determination, other than mere rationality, "in those rare cases where certain necessary attributes cannot be assessed by a written examination" (McGowan v Burstein, 71 NY2d 729, 734). Accordingly, it is no answer to remove the office from competitive examination in an "all or nothing approach". The preferred solution is to find a "middle ground" in those cases where both competitive testing and consideration of untest-

able attributes are necessary for a complete evaluation of merit and fitness *(supra,* at 734-735). Moreover, it seems to us that where, as here, petitioners have demonstrated the presence of genuine issues of fact, the Commission was required to come forth with hard evidence or some empirical data to sustain its determination, rather than relying exclusively upon the subjective conclusions of the agency, here DEC, seeking reclassification. In other words, there should be a search for that "middle ground".

The point of departure in any such search is, of course, the constitutional mandate of competitive examination for all civil service appointments (NY Const, art V, § 6). Exemption is the exception and is constitutionally permissible only when it is established that a competitive examination is not practicable. Practicability denotes the ability to *objectively* and "fairly test the relative capacity and fitness of the applicants to discharge the duties of the service to which they seek appointment" (19 NY Jur 2d, Civil Servants and Other Public Officers and Employees, § 321, at 164; *see,* Civil Service Law § 50 [6]; *see generally, Matter of Fink v Finegan,* 270 NY 356, 361-363), and begins with an analysis of the nature and character of the duties involved in the performance of a particular position *(see, Matter of Friedman v Finegan,* 268 NY 93, 97).

Essentially, there are two different bases upon which impracticability can be asserted: (1) because of the confidential character of the position, or (2) because the nature of the duties involved is such that a competitive examination is an insufficient method "to fully and fairly determine the merit and fitness of the contemplated employee" *(People ex rel. Sweet v Lyman,* 157 NY 368, 382).* Once it is established that the character of the position is such that it falls into the former category, case law suggests that, in most cases, this characteristic alone is a sufficient basis for exemption of the position from competitive classification *(see, Matter of Grossman v Rankin,* 43 NY2d 493, 508, *supra; People ex rel. Sweet v Lyman, supra; Matter of Burke v Axelrod,* 90 AD2d 577, 578; *cf., Matter of Ottinger v State Civ. Serv. Commn.,* 240 NY 435, 441-443). However, if the alleged impracticability is of the latter type, as is asserted herein, the conclusion is not so

---

* Such duties for which objective testing have been found to be impracticable include those which require personal qualities such as "fairness, patience, common sense and judgment" *(Matter of Powers v Taylor,* 286 App Div 575, 578, *affd* 3 NY2d 952), and those which require involvement in policy formulation *(Matter of Burke v Axelrod,* 90 AD2d 577, 578).

clear-cut. In view of the constitutional mandate that competitive examinations shall be held *so far as practicable,* the Court of Appeals appears to engage in further analysis to determine if the nature and character of the duties involved are simply not amenable to competitive testing whatsoever or whether the position requirements involve a combination of testable and untestable skills *(see, McGowan v Burstein,* 71 NY2d 729, 734-735, *supra; Matter of Fink v Finegan,* 270 NY 356, 362-363, *supra; People ex rel. Sweet v Lyman,* 157 NY 368, 382-383, *supra).* It is in these latter cases that the court appears to favor a competitive examination for the skills which are capable of objective testing combined with a method of considering those qualities which are not *(see, McGowan v Burstein, supra; Matter of Fink v Finegan, supra).*

Superimposed upon this analysis is the additional requirement that in the event an agency's determination is administrative rather than quasi-judicial, a trial de novo on the issues raised is required (CPLR 7804 [h]; *see, Matter of Averack v Poston,* 43 AD2d 657), wherein a petitioner may present any competent and relevant proof bearing on the issues presented, including challenges to the underlying facts upon which the agency based its determination *(Matter of Mandle v Brown,* 5 NY2d 51, 65).

Although here the nature of the DEC director positions under consideration may have increased in size and complexity since 1970 and they now operate in an era of heightened political sensitivity, we must assume that there has been a parallel expansion and improvement in the methods and manner of testing by competitive examination, both oral or written, by the Commission. Accordingly, the matter should be remitted for further consideration of the practicability of a combination of oral and written examinations in the selection process *(see, McGowan v Burstein, supra,* at 734-735).

CASEY, MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur.

Judgment reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision.