■ In the Matter of NEW YORK STATE INSPECTION, SECURITY & LAW ENFORCEMENT EMPLOYEES, DISTRICT COUNCIL 82, AFSCME, AFL-CIO, et al., Respondents, v STATE OF NEW YORK CIVIL SERVICE COMMISSION et al., Appellants. [615 NYS2d 777] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Peters, J.), entered November 10, 1993 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul respondents' determination denying the reallocation of salary grades for certain employment classifications.

In 1990, petitioners applied to respondent State Civil Service Commission's Division of Classification and Compensation (hereinafter the Division), pursuant to Civil Service Law § 120

(1), to have positions denominated Security Services Assistant (hereinafter SSA) I, II and III, currently allocated to salary grades 6, 9 and 12, respectively, upgraded. Employees filling these positions provide 24-hour unarmed security coverage at State facilities and buildings; employees holding the positions of SSA-II and SSA-III are, for the most part, supervisors, responsible for assignment and direct supervision of SSA-Is. The application and supporting documents urge that upgrading is called for because of an increase in the scope and complexity of the tasks performed by SSAs, because their responsibilities and duties have become comparable to those of several other positions that are graded higher, and because the current salary limitations have created problems in recruitment and retention.

After an informal hearing, the Director of the Division denied petitioners' application. That decision was upheld on appeal by the Commission, prompting petitioners to bring this CPLR article 78 proceeding. Supreme Court found that, in view of petitioners' "overwhelming" evidence indicating that the duties of SSAs have substantially increased since the positions were last upgraded, the Commission's failure to furnish any "hard evidence" in support of its determination rendered the same arbitrary and capricious. The determination was annulled and the matter remanded to the Commission for further consideration. Respondents appeal.

Respondents convincingly argue that Supreme Court erred in requiring them to come forward with "hard evidence" justifying their determination. That requirement is confined to those rare cases where, in order to classify the position, it is necessary to assess attributes that cannot be evaluated by a written competitive examination (see, Matter of Condell v Jorling, 151 AD2d 88, 92-93). Where, as here, the constitutional preference for competitive examinations (see, NY Const, art V, § 6; McGowan v Burstein, 71 NY2d 729, 734-735) is not implicated, there is no need to go beyond the usual requirement that the reason given by the agency for its determination need only be rational, in view of all the evidence before it (see, e.g., Matter of Stein v Nassau County Civ. Serv. Commn., 176 AD2d 739).

Considered in this light, the Commission's denial of petitioners' application must be upheld. In its denial letter, the Commission listed the criteria used to decide whether reallocation—a change in salary grade without any change in title or position—is warranted. Those criteria include the education and experience required of candidates for the position, oral

and written communication skills required, the complexity of the work, responsibility to be exercised, supervisory and managerial duties, and job demands. Also considered is whether there have been any problems in recruitment and retention; the Commission noted that recruitment and retention data provide "an excellent indicator" of whether reallocation is necessary.

Reviewing petitioners' three arguments in order, the Commission, not irrationally, found that although the duties of SSA-Is have changed somewhat since the position was denominated "Building Guard" prior to 1985, the primary functions remain those of patrol and observation, with an emphasis on preserving security by their presence. Rational also is the Commission's conclusion that certain tasks, including those of performing first aid and issuing parking tickets, were "implicit" in the old specification of a Building Guard's duties. That specification, which by its nature was not intended to be as detailed as the current "classification standard", nevertheless included the tasks of assisting visitors, removing sick and injured persons, and preparing accident reports. It is true that some SSAs are now trained in first aid and CPR, but the record also shows that such training is not required of all SSA-Is, and that their primary task in a medical emergency is still to summon appropriate medical personnel. The specification also reflects that Building Guards were required to "direct parking" and to "patrol parking lots", either of which could be interpreted to encompass the issuance of citations for improper parking.

Furthermore, like Building Guard candidates, SSA-I candidates need not have completed any particular level of education or acquired any previous experience; and although petitioners make much of the fact that SSA-Is now have to complete written reports, the record discloses that Building Guards also had to complete accident and lost property reports. Building Guards were also obligated, like SSA-Is, to work overtime, holidays and weekends. In sum, the essential functions of the position have changed little.

Not insignificantly, the Commission adequately distinguished the functions performed by SSAs from those handled by employees in the positions of Safety and Security Officer I (grade 12) and Campus Public Safety Officer II (grade 12), both of which require peace officer status, have greater minimum educational prerequisites and mandatory training for all recruits, and are focused on law enforcement, as well as those of Security Officers (grade 8), who are in constant contact with

claimants in State benefit offices, and hence are exposed to a higher degree of risk. Supreme Court found these distinctions rational, and we agree. Moreover, as the Division's Director observed in his initial denial of petitioners' application, reallocation to the level requested would place SSAs in the same grade as Capital Police Officers, armed peace officers who have full arrest authority and perform more demanding law enforcement functions.

And finally, relying on data indicating that separation and retirement rates for SSAs are lower than the general State-wide rates, and that the problems downstate are not unique to SSAs and are better remedied by geographical salary differentials, the Commission found that there are no problems in recruitment or retention that would be solved by reallocation. This provides additional, empirical support for the Commission's determination, and represents a further rational basis therefor.

Mikoll, J. P., Mercure, Crew III and Weiss, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, determination confirmed and petition dismissed.