■ In the Matter of ROGER E. BENSON, as President of the New York State Public Employees Federation, AFL-CIO, et al., Appellants, v ELIZABETH MCCAUL, as Superintendent of the New York State Banking Department, et al., Respondents. [702 NYS2d 164] —Graffeo, J. Appeal from a judgment of the Supreme Court (Connor, J.), entered April 7, 1999 in Albany County,

which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Civil Service Commission approving noncompetitive classification for civil service positions in respondent Banking Department.

This proceeding arises out of respondent Banking Department's request to have 35 newly created positions within a Risk Management/Capital Markets Specialist job title series (hereinafter Risk Management positions) and 39 Trust Examination Specialist and Internal Control and Audit Specialist positions classified in the noncompetitive jurisdictional class by respondent Civil Service Commission. After reviewing written submissions and conducting an informal hearing with testimony from the Department, petitioner New York State Public Employees Federation, AFL-CIO (hereinafter PEF) and Commission staff, the Commission approved the Department's request to classify the Risk Management positions as noncompetitive but disapproved reclassification of the Trust and Internal Audit positions. Thereafter, petitioners commenced this CPLR article 78 proceeding seeking the abolition of the Risk Management positions and the annulment of appointments to such job titles. Supreme Court dismissed the petition and upheld the Commission's classification.

Petitioners appeal, contending that the Commission's determination was arbitrary and capricious and in contravention of the relevant provisions of the Civil Service Law and the NY Constitution, article V, § 6. It is axiomatic that substantial deference should be accorded to the Commission's determination and our scope of review is limited to whether the decision was arbitrary and capricious, affected by an error of law or an abuse of discretion (see, CPLR 7803 [3]; Matter of Condell v Jorling, 151 AD2d 88, 92). Therefore, if a rational basis existed for the classification, it will be upheld (see, Matter of Grossman v Rankin, 43 NY2d 493, 502-503; Matter of Goodfellow v Bahou, 92 AD2d 1085, 1086, lv denied 59 NY2d 606).

Preliminarily, we note that contrary to petitioners' assertion, we are not precluded from engaging in a de novo review (see, Matter of Grossman v Rankin, supra, at 503) to determine whether the Commission's determination was rational, notwithstanding the fact that it did not issue a written decision explaining its rationale (cf., Matter of Condell v Jorling, supra, at 92; Matter of Levitt v Civil Serv. Commn., 150 AD2d 983, 985; Matter of Berkowitz v New York State Civ. Serv. Commn., 150 AD2d 978, 979-980, lv denied 74 NY2d 610). The record here, which includes numerous submissions from both

parties as well as the Commission's minutes, is sufficiently developed to provide an adequate basis upon which to review the decision of the Commission.

Appointments for civil service positions shall be made, "as far as practicable", by competitive examination (NY Const, art V, § 6). If a competitive examination is not practicable, due to either the confidential nature of the position or because the character of the position renders an examination inadequate to measure the qualifications of the prospective employee, exemption is permissible (*see, Matter of Condell v Jorling, supra*, at 93). The record reveals that the addition of the Risk Management positions in the Department was prompted by the rapid expansion of the banking industry into new derivative products and the use of innovative risk measurement techniques. The Commission's decision to approve noncompetitive classification for the Risk Management positions was based on the impracticability of competitive testing of the "merit and fitness" of applicants (Civil Service Law § 42 [1]).

Before the Commission in December 1997, PEF, as the collective bargaining unit representing the over 300 Bank Examiners employed in the Department, objected to the exemption of any of the four Risk Management titles from competitive status, essentially arguing that the new job titles were merely variations in duties performed by competitive Bank Examiner employees and the Department's efforts to attain noncompetitive classification was a serious erosion of the merit system in contravention of constitutional requirements. Asserting that the "critical expertise" required for Risk Management assignments already existed in the Department within the ranks of Bank Examiners, PEF cited understaffing as the primary need driving the request for noncompetitive classification, a situation it deemed "self-inflicted" by the Department. In support of its contention that Risk Management position qualifications could be adequately tested through competitive examination, it indicated that a knowledge of capital markets was one element of testing in the Bank Examiner series. In PEF's view, the knowledge and skills required for the new positions were, in fact, qualitative and, hence, the Risk Management titles were not entitled to exemption from competitive jurisdictional classification.

In support of its request, the Department submitted affidavits and numerous documents including organizational proposals and job descriptions, in addition to testimony, claiming that written or oral testing would be inadequate in light of the growing complexity of regulated financial fields, paired

with the highly specialized and rapidly changing skills and judgment required for the new title series. Although acknowledging that some of the special expertise needed for the Risk Management positions was similar to the skills and knowledge possessed by Bank Examiners, the Department contended that the expanded requisite familiarity with novel financial instruments and capital markets was not required of Bank Examiners.

As set forth in an exhibit to the petition, the civil service classification standards for the positions of Bank Examiner— Grade 18 and Senior Bank Examiner—Grade 23 described the general nature of such employment as involving the performance of "on-site examinations and reviews of institutions' financial standing, operating procedures and management controls or when assigned to one of the Department's office divisions review and analyze field examination reports [and] periodic financial reports submitted by particular types of institutions". Respondent Superintendent of the Department, in furtherance of the request for noncompetitive classification, stressed the need to alter its traditional "generalist approach to examination functions" due to the inability of the Department to conduct meaningful examinations with respect to the emergence of new highly specialized fields. In contrast to the oversight duties of Bank Examiners, a limited number of employees were needed with specialized expertise in the following areas: Risk Management, Trading, Treasury Operations and Model Validation. The Department urged that in order to utilize existing staff "[i]n most cases, acquiring this [expertise] would entail years of full time training", and hence its immediate concern with recruiting from industry sources. Evidence was further produced demonstrating the need for individuals with "hands-on" experience in certain fields, such as international finance. It was submitted that such qualifications were unable to be evaluated by examination due to the dynamic nature of the industry which rendered an examination virtually obsolete before completion of the competitive process.

Notably, the Commission undertook its own review of the proposal and its Staffing Services Division engaged in a comparison of the Risk Management and Bank Examiner titles. Concluding there were substantial differences in the in-depth knowledge of capital markets instruments and risk management techniques which justified exemption from competitive testing, it found the development of written or oral test questions or the use of a training and experience examination to be impractical to fully evaluate all of the necessary qualifications

and skills. The conclusions of the Staffing Services Division were echoed by a report submitted by the Commission's Director of Classification and Compensation Division and by the Commission Unit Staff. Thus, three separate internal Commission analyses concurred in the recommendation to approve noncompetitive classification.

Upon our review of the entire record, we find that the Commission had a rational basis to determine that competitive testing was not a practicable method to ascertain the knowledge, skills and abilities of applicants for the enumerated positions. Similarly, petitioners have not met their burden in proving the absence of a rational basis in connection with the Commission's noncompetitive designation of the Chief Risk Management Specialist due to the confidential and policy-making aspects of this managerial position (see, Matter of Goodfellow v Bahou, 92 AD2d 1085, 1086, supra; see also, Matter of Levitt v Civil Serv. Commn., 150 AD2d 983, 985, supra). Accordingly, we see no reason to disturb Supreme Court's judgment.

We have considered petitioners' remaining contentions and have found them to be lacking in merit.

Cardona, P. J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.