■ In the Matter of KENNETH BRYNIEN, as President of the New York State Public Employees Federation, ALF-CIO, et al., Respondents, v NEW YORK STATE DEPARTMENT OF CIVIL SERVICE et al., Appellants. [913 NYS2d 411]—

Peters, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered July 29, 2009 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Civil Service Commission reclassifying 29 titles from competitive to noncompetitive.

Respondent Department of Civil Service (hereinafter Department) requested the reclassification of over 30 medical job titles from competitive to noncompetitive by respondent Civil Service Commission (hereinafter Commission). New York State Public Employees Federation, AFL-CIO objected and was thereafter given an opportunity to submit comments to the Commission. After reviewing written submissions and conducting an informal hearing, the Commission approved the Department's request to reclassify as noncompetitive 29 enumerated clinical physician, medical specialist, psychiatrist, pathologist, dentist and veterinarian job titles, but denied reclassification for pharmacy-related titles. Petitioners then commenced this CPLR article 78 proceeding challenging that determination. Concluding that the Commission's decision to reclassify lacked a factual and rational basis, Supreme Court granted the petition and annulled the determination. This appeal by respondents ensued.[1]

It is axiomatic that a job classification determination is subject to limited judicial review and will not be disturbed absent a showing that it was wholly arbitrary or without a rational basis (*see Cove v Sise*, 71 NY2d 910, 912 [1988]; *Matter of Association of Secretaries to Justices of Supreme & Surrogate's Cts. in City of N.Y. v Office of Ct. Admin. of State of N.Y.*, 75 NY2d 460, 476

---

1. An amicus brief was filed in support of Supreme Court's determination by the Uniformed Emergency Medical Technicians, Paramedics and Inspectors, FDNY, Local 2507, DC 37, AFSCME, AFL-CIO.

[1990]). If the classification determination has a rational basis in the record, it will be upheld even if there exists legitimate grounds for a difference of opinion (*see Matter of Grossman v Rankin*, 43 NY2d 493, 505-506 [1977]; *Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys.*, 35 AD3d 1008, 1009 [2006]).

NY Constitution, article V, § 6 mandates that appointments and promotions to civil service positions be made according to merit and fitness to be determined, "as far as practicable," by competitive examination (*see Matter of Wood v Irving*, 85 NY2d 238, 243-244 [1995]; *McGowan v Burstein*, 71 NY2d 729, 731-732 [1988]). This constitutional provision, being "a reflection of our citizens' insistence that competence, rather than cronyism, should determine civil service appointments" (*McGowan v Burstein*, 71 NY2d at 733), favors competitive examination "because it provides, presumably, an objective and verifiable measurement of the candidates' merit" (*id.* at 734; *see Matter of Fink v Finegan*, 270 NY 356, 361-362 [1936]). As such, " '[e]xemption is the exception and is constitutionally permissible only when it is established that a competitive examination is not practicable' " (*Matter of Shafer v Regan*, 171 AD2d 311, 313 [1991], *affd* 80 NY2d 1006 [1992], quoting *Matter of Condell v Jorling*, 151 AD2d 88, 93 [1989]; *see Matter of Wood v Irving*, 85 NY2d at 249). Here, the record is bereft of evidence providing a rational basis for the Commission's determination that competitive testing is not a practicable method to ascertain the merit and fitness of applicants for the enumerated positions.

The Department argues, as it did in its request for reclassification, that because the job titles at issue already require a license, credential and/or board certification, competitive examination for these positions is "unnecessary, redundant and adds no value to the assessment of candidates' merit and fitness." Whether a competitive examination is "redundant" or "unnecessary," however, has no bearing on whether such an examination is impracticable. "Practicability denotes the ability to *objectively* and fairly test the relative capacity and fitness of the applicants to discharge the duties of the service to which they seek appointment" (*Matter of Condell v Jorling*, 151 AD2d at 93 [internal quotation marks and citation omitted]; *accord Matter of Shafer v Regan*, 171 AD2d at 313; *see Matter of Wood v Irving*, 85 NY2d at 248).[2] The job titles at issue have been classified as competitive for over 30 years and, with no showing of

---

2. Competitive testing may also be found impracticable due to the confidential nature of a position (*see Matter of Benson v McCaul*, 268 AD2d 756, 758 [2000], *lv denied* 94 NY2d 764 [2000]; *Matter of Condell v Jorling*,

any change in the nature of the duties performed by these positions, this longstanding use of competitive examination belies any assertion that the knowledge, skills and abilities required for these positions cannot be assessed by this means (*see Matter of Wood v Irving*, 85 NY2d at 249; *see also Matter of Levitt v Civil Serv. Commn. of State of N.Y.*, 150 AD2d 983, 985 [1989]). Indeed, respondents acknowledge that the knowledge, skills and abilities required for these positions can be objectively tested by competitive examination. "Because the qualifications for the position[s at issue] are measurable, to some extent, by competitive examination, the [Commission] would be hard put to declare impracticability by simple fiat" (*Matter of Wood v Irving*, 85 NY2d at 249).

Morever, the claim that the competitive examinations are "redundant" and "unnecessary" lacks a factual basis in the record. The competitive examinations used for the job titles at issue, commonly known as training and experience examinations, assess and rank candidates based upon postlicense work experience and training beyond the minimum requirements. Candidates who meet the minimum requirements for appointment—i.e., possess the relevant license and/or certification—receive a score of 70. Additional points are then awarded for additional training and/or practical experience, such as residencies and fellowships. Therefore, a qualified candidate who has postlicensure years of training and/or additional experience will receive a proportionately higher test score than a candidate who has the required license or certification but has no additional training or experience beyond the minimum requirements. Clearly, as competitive examination takes into account additional objective factors over and above the mere possession of the license and/or certifications required for the various positions, it is not redundant.

Moreover, to the extent that the Department argues that competitive examination "adds little if any value" to the assessment of a candidate's merit and fitness because the license, credential and/or board certification required for the job titles already provides an objective and verifiable measure of a candidate's qualifications for the position, we stress that the NY Constitution *mandates* that appointments be made according to fitness *and merit* (*see* NY Const, art V, § 6; *see also McGowan v Burstein*, 71 NY2d at 734 ["Merit selection is the overarching constitutional goal and command."]). A licensing accreditation

151 AD2d at 93). Respondents make no claim, and we find no basis to conclude, that the positions at issue are of a confidential nature such that competitive examination would be impracticable.

process measures whether an applicant is *fit* to practice in that discipline according to the minimum standards established by the regulating authority. While we do not suggest that the licensing process has no bearing on a candidate's merit, there is no basis to conclude that additional training and experience above the accreditation process would be irrelevant in assessing a candidate's merit. Notably, the Department's claim of irrelevancy is belied by its own job descriptions for essentially all of the positions, which not only indicate that possession of the required license is only a *minimum* qualification for the position, but also that the distinguishing factor with respect to a candidate's qualifications is the number of years of work experience. Thus, we simply find no factual or rational basis for the conclusion that competitive testing is impracticable because the possession of a credential, license and/or board certification is an adequate substitute for measuring a candidate's fitness and merit.

The Department's claim of impracticability is also grounded on the assertion that candidates who rank highest on the examination—the candidates with the most training and experience— are not necessarily the best qualified for the position. However, this is true with any job title. Moreover, the Department has not submitted any facts or empirical data to support its claim in this regard, other than its conclusory assertion that "[e]xperience has shown" that ranking candidates based upon years of experience does not ensure that candidates with the most experience are the most qualified for the job. As Supreme Court aptly noted, there is no basis in the record for a conclusion that, all other things being equal, the candidate with the most training and experience is not likely to be most qualified for the job. In this regard, we reiterate that the classification standards issued by the Department for nearly all of the job titles at issue clearly establish that work experience is the primary and distinguishing factor in evaluating a candidate's fitness and merit. While the Department notes that the competitive examinations for the subject job titles do not rank candidates based on experience and training that is relevant to the specific type of work that the particular position requires, this could easily be remedied by a mere specification of the particular training needed for any given position. It would not, as the Department suggests, provide a basis to dispose of the constitutionally preferred competitive examination. Moreover, under the so-called "rule of three," the appointing authority is never required to appoint or promote the candidate with the highest score; it is given flexibility and may choose among other reachable candidates if it finds them to be more qualified for a partic-

ular position (see Civil Service Law § 61 [1]). To the extent that the Department suggests that a candidate's on-the-job performance, coupled with a noncompetitive examination, would provide a more effective indicator of merit and fitness, we need only note that this is not a valid basis for dispensing with competitive examination (see Matter of Wood v Irving, 85 NY2d at 249).

Finally, the Department's claim that the use of competitive examination causes delay in the hiring process and inhibits the ability to recruit qualified employees is, under these circumstances, entirely irrelevant to practicability—that is, the ability to objectively and fairly assess candidates' merit and fitness by way of competitive examination. Even if it were relevant to the issue of practicability, the record is bereft of any evidence, as opposed to conclusory assertions, supporting such a claim. For all of these reasons, we agree with Supreme Court's conclusion that the Commission's determination that competitive testing is not practicable for the subject medical titles lacks a rational basis in the record.

Cardona, P.J., Spain, Kavanagh and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs. **[Prior Case History: 2009 NY Slip Op 31656(U).]**