Matter of Spence v New York State Dept. of Civ. Serv. (2021 NY Slip Op 04994)





Matter of Spence v New York State Dept. of Civ. Serv.


2021 NY Slip Op 04994


Decided on September 16, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:September 16, 2021

530944
[*1]In the Matter of Wayne Spence, as President of the Public Employees Federation, AFL-CIO, Appellant,
v
New York State Department of Civil Service et al., Respondents.

Calendar Date:August 19, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.

Renee L. Delgado, New York State Public Employees Federation, AFL-CIO, Albany (Kimberly A. Livingstone of counsel), for appellant.
Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for respondents.



Lynch, J.
Appeal from a judgment of the Supreme Court (Mackey, J.), entered January 13, 2020 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Civil Service Commission reclassifying certain civil service job titles.
In 2017, the Department of Financial Services (hereinafter DFS) requested that the Civil Service Commission (hereinafter the Commission) place the titles of Director, Financial Services Programs 1 and 2 (hereinafter the director positions) in the noncompetitive jurisdictional class with a policy-influencing designation (see Civil Service Law § 42 [2-a]). DFS also sought to convert certain vacant noncompetitive investigative positions to the titles of Investigator 1 and Assistant Chief Investigator (hereinafter the investigator positions) and to place them in the exempt jurisdictional class. The Public Employees Federation, AFL-CIO (hereinafter PEF) opposed the requests, but the Commission ultimately approved the title classifications. Resolutions adopting the Commission's determinations were published in the State Register, and petitioner — the president of PEF — thereafter commenced this CPLR article 78 proceeding challenging the Commission's determinations as arbitrary and capricious and contrary to law. Following joinder of issue, Supreme Court dismissed the petition, finding the Commission's determinations to be rational. Petitioner appeals.
We affirm. To prevail, petitioner bore the burden of demonstrating that the Commission erred in its job classification determinations, which are "subject to limited judicial review and will not be disturbed absent a showing that [they were] wholly arbitrary or without a rational basis" (Matter of Brynien v New York State Dept. of Civ. Serv., 79 AD3d 1501, 1502 [2010]; see Cove v Sise, 71 NY2d 910, 912 [1988]; Matter of Spence v New York State Dept. of Civ. Serv., 156 AD3d 987, 988 [2017], lv denied 31 NY3d 905 [2018]). It is "well-settled [s]tate policy that appointments and promotions within the civil service system must be merit-based and, when 'practicable,' determined by competitive examination" (Matter of Wood v Irving, 85 NY2d 238, 243 [1995], quoting NY Const, art V, § 6; accord Matter of Spence v New York State Dept. of Civ. Serv., 156 AD3d at 988). However, "[t]he constitutional dictate does not create an absolute bar to civil service appointments and promotions without competitive examinations" (Matter of Wood v Irving, 85 NY2d at 243). To that end, "[t]he Commission may
. . . place a title in the noncompetitive class where 'it is impracticable to determine merit and fitness for the berth by competitive examination'" (Matter of Spence v New York State Dept. of Civ. Serv., 156 AD3d at 988, quoting Matter of Goodfellow v Bahou, 92 AD2d 1085, 1085 [1983], lv denied 59 NY2d 606 [1983]; see Civil Service Law § 42 [1]; Matter of Wood v Irving, 85 NY2d at 243). Such impracticability may arise "'due to [*2]either the confidential nature of the position or because the character of the position renders an examination inadequate to measure the qualifications of the prospective employee'" (Matter of Spence v New York State Dept. of Civ. Serv., 156 AD3d at 988, quoting Matter of Benson v McCaul, 268 AD2d 756, 758 [2000], lv denied 94 NY2d 764 [2000]).
With respect to the director positions, the record reveals that DFS requested that they be placed in the noncompetitive class due, in part, to the high-level nature of the positions and the specialized responsibilities associated therewith. In that respect, DFS submitted evidence that those in the director positions would be responsible for "[o]versee[ing] all aspects of in-depth examinations, audits and regulatory matters of the various financial institutions and other businesses regulated by [DFS] consistent with the [s]tate's [l]aws, [r]ules and [r]egulations." Indeed, the proposed job descriptions for the director positions explain that the incumbents are required to have over a decade of specialized experience and are responsible for policy formation and development, as well as managerial tasks such as "manag[ing] a group of professional and clerical staff" and "[s]erv[ing] as a management level liaison with the Division of Administration." Fulfilling these responsibilities necessarily requires specialized managerial skills and the ability to maintain close and confidential relationships with senior policy makers — traits that cannot be adequately gauged through competitive examination.
An affidavit of Allen Jordan, the Commission's manager of operations, explained that the Commission's Staffing Services Department — which advises the Commission about "whether competitive examination is practicable for the proposed title/positions" — determined that competitive examination was impracticable for the director positions due to the policy-making functions associated therewith. Jordan's affidavit also makes clear that the Commission had before it information that the responsibilities of the directors were substantially similar to existing exempt and noncompetitive class positions at DFS. Given the high-level nature of the director positions, coupled with the specialized skills and policy-influencing functions associated therewith, the Commission's determination to classify the titles as noncompetitive with a policy -influencing designation has a rational basis and will not be disturbed (see Matter of Spence v New York State Dept. of Civ. Serv., 156 AD3d at 989; Matter of Benson v McCaul, 268 AD2d at 758-760; Matter of Burke v Axelrod, 90 AD2d 577, 578 [1982]; compare Matter of Brynien v New York State Dept. of Civ. Serv., 79 AD3d at 1503-1504).[FN1] Moreover, contrary to petitioner's related assertion, the fact that the director positions have some overlapping responsibilities with other competitively-tested positions does not preclude a finding that competitive examination is impracticable for these [*3]titles (see generally Matter of Benson v McCaul, 268 AD2d at 759-760).
The Commission's determination to place the investigator positions in the exempt jurisdictional class also has a rational basis. A position may be classified as exempt when "competitive or non-competitive examination may be found to not be practicable" (Civil Service Law § 41 [1] [e]). "The criteria necessary to permit exempt classifications are the confidential nature of the position, the performance of duties which require the exercise of authority or discretion at a high level or the need for the appointee to have some expertise or personal qualities which cannot be measured by a competitive examination" (Matter of Spence v New York State Dept. of Civ. Serv., 189 AD3d 1785, 1786 [2020] [internal quotation marks, brackets, citations and ellipses omitted]). In support of its request to place the investigator positions in the exempt jurisdictional class, DFS noted that the incumbents would be "utilized in investigation and enforcement activities consistent with the statutory and regulatory powers of DFS." To that end, the incumbents are charged with various investigative tasks, including interviewing witnesses and complainants, "conduct[ing] surveillance and engag[ing] in undercover work," safeguarding evidence and conferring with law enforcement. DFS explained that these responsibilities required "highly specialized skills" being applied to "highly sensitive" work and that, to successfully carry out their duties, the investigators would be required to maintain "the full faith and trust of the DFS [s]uperintendent" and "close and confidential relationships [with] senior policy makers." Considering the confidential and sensitive nature of the positions, we cannot conclude that the Commission's determination to place the investigator positions in the exempt jurisdictional class was arbitrary and capricious or without a rational basis (see id.; Matter of Burke v Axelrod, 90 AD2d at 578). Petitioner's remaining contentions have been considered and found lacking in merit.
Egan Jr., J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: We reject petitioner's assertion that DFS failed to produce evidence beyond mere conclusory statements to support its request that the director positions be designated as policy-influencing. DFS submitted a list of proposed job responsibilities associated with the positions, which clearly set forth the policy-influencing nature thereof.