(108 App. Div. 1.)

PEOPLE ex rel. GILHOOLY v. McADOO, Police Com'r.

(Supreme Court, Appellate Division, Second Department. October 20, 1905.)

1. MUNICIPAL CORPORATIONS—POLICEMEN—CIVIL SERVICE LAWS.

Const. art. 5, § 9, provides that appointments and promotions in the civil service shall be made according to merit and fitness, to be ascertained as far as practicable by competitive examination. Civil Service Law, Laws 1899, p. 795, c. 370, § 15, provides that vacancies in positions in the competitive class shall be filled as far as practicable by promotion, requires promotions to be based on merit, and defines an increase of salary as a promotion. New York Charter, § 290 (Laws 1897, p. 99, c. 378, as amended by Laws 1901, p. 122, c. 466, requires the police commissioner to maintain a central office bureau of detectives and to select persons to perform detective duty therein from the patrolmen or roundsmen, and provides that the persons so selected shall be known as "detective sergeants" and shall receive the same pay as other sergeants of police. Section 299 of the charter (Laws 1901, p. 125, c. 466) limits the salary of a roundsman to $1,500 a year and fixes the salary of a detective sergeant at $2,000. *Held*, that a roundsman appointed to the central office bureau of detectives is promoted, within the meaning of the constitutional requirement of competitive examinations, and, when appointed after the classification of the position of detective sergeant in the competitive schedule by resolution of the municipal civil service commission, must be appointed pursuant to a civil service examination.

Woodward, J., dissenting.

Appeal from Special Term, Kings County.

Mandamus proceedings by the people, on the relation of William B. Gilhooly, against William McAdoo, as police commissioner of the city of New York. From an order awarding a peremptory writ, defendant appeals. Reversed.

The following is the opinion of the court below (Maddox, J.) at Special Term:

It was, and still is, the plain duty of the police commissioner to maintain a detective bureau, the headquarters of which shall be at the police headquarters in Manhattan borough and a branch at the police headquarters in Brooklyn, with as many detectives, to be selected and appointed from the patrolmen and roundsmen, as the commissioner "may from time to time determine necessary to make that bureau efficient." The language of the charter is plain; for it is that he "shall maintain" such a bureau, to be known as the "Central Office Bureau of Detectives," and also that he "shall select and appoint * * * as many detectives" thereto as may be necessary for efficiency. He is required to make such selections from among the patrolmen and roundsmen, and he is necessarily called upon to determine as to the especial qualification and fitness for such duty (Charter, Laws 1901, p. 122, c. 466, § 290) of those so selected. The relators were duly selected, appointed, and assigned to the performance of detective duty in "the central office bureau of detectives," and upon such assignments they became and were

then to be known as "detective sergeants." They were either patrolmen or roundsmen, and upon being detailed to such detective duty they were entitled to all the rights and benefits conferred by the statute, and the status of each was then created. They were undoubtedly selected because of some especial aptitude and as qualified for the duties to which they were so assigned, and it cannot, in my opinion, be deemed a promotion within the contemplation of section 288 of the charter, wherein it is provided that promotion shall be as follows: Of roundsmen, from among the patrolmen; of sergeants, from among the roundsmen; of captains, from among the sergeants; and of inspectors, from among the captains. The composition of the police force is defined by section 276 of the charter, which provides that there shall be "detective sergeants to the number authorized by law," while the order of promotion from the various grades is provided for with certainty by section 288. Sections 276, 288, and 290 must be read together. The Legislature has seen fit to provide that the selections by the commissioner for appointment as detective sergeants shall be from the patrolmen, as well as from the roundsmen, while civil service rules 37 and 68 seemingly look to their selection from among the roundsmen only, the next designated grade below that of a sergeant, as set forth by section 288. If the defendant's contention is to obtain, then the discretion vested in the commissioner to make selections from among the patrolmen would be nullified, and he would be compelled to select and appoint from an eligible list of roundsmen. This would defeat the purpose of the section (290) that selections "shall * * * be * * * from the patrolmen or roundsmen." A careful reading of the Sugden and Fay Cases (174 N. Y. 87, 66 N. E. 655, and 174 N. Y. 526, 66 N. E. 1107) leads to the conclusion that these motions should be granted.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

James D. Bell (P. E. Callahan, on the brief), for appellant.
Joseph A. Burr, for respondent.

PER CURIAM. This is an appeal by William McAdoo, as police commissioner of the city of New York, from an order of the Kings county Special Term that a peremptory writ of mandamus issue directing that he recognize the relator as a detective sergeant of police and that he "make and certify proper pay rolls certifying that the said William B. Gilhooly is entitled to draw and be paid the same as other sergeants of police, to wit, at the rate of two thousand dollars ($2,000) per year from the date of his assignment to the position of detective sergeant." The order should be reversed, and the motion denied.

The relator for some years has been a member of the police force of the city of New York, and since December, 1902, has been a roundsman therein. On the 7th day of February, 1903, he was assigned to the Brooklyn borough headquarters squad to perform detective duty in said borough, and ever since that date has been and now is performing such duty. His appointment as a detective sergeant was made under color of the provisions of section 290 of the charter of the city of New York (chapter 378, p. 99, of the Laws of 1897, as amended by chapter 466, p. 122, of the Laws of 1901), which reads as follows:

"The police commissioner shall maintain a bureau which shall be called the central office bureau of detectives, and shall select and appoint to perform detective duty therein from the patrolmen or roundsmen as many detectives as the said commissioner may from time to time determine necessary to make that bureau efficient. The patrolmen or roundsmen so selected and appointed, and the patrolmen or roundsmen heretofore selected, appointed or assigned to perform detective duty in the detective bureau, or in

what is known as the headquarters squad, and who were acting in said bureau or squad on the first day of April, nineteen hundred and one, shall be known as detective sergeants, shall act as such in said bureau, and shall hold the same rank and shall be eligible for promotion in the entire police force in the city under the same rules and conditions applicable to the promotion of all other sergeants of police in said city, and shall not be reduced in rank or salary except in the manner provided by law for sergeants and other officers of the police force. These patrolmen or roundsmen known as detective sergeants on the first day of April, nineteen hundred and one, as aforesaid in the detective bureau shall have the power to draw and be paid the same pay as other sergeants of police. Nothing in this section shall be construed to authorize the police commissioner to appoint any additional patrolmen in place of said detective sergeants. The headquarters of the said central office bureau of detectives shall be at the police headquarters in the borough of Manhattan, and a branch office thereof shall be maintained at the police headquarters in the borough of Brooklyn, and other branch offices thereof may be maintained at the police headquarters in each of the other boroughs into which the city of New York is divided by this act."

The designation of the relator to the position of detective sergeant in the borough of Brooklyn was made without the relator having submitted to any civil service examination looking towards his appointment as such. The position of detective sergeant was classified in the competitive schedule by a resolution of the municipal civil service commission, adopted May 3, 1902, approved by the mayor May 8, 1902, and approved by the state civil service commission on May 10, 1902, and the resolution was subsequently included in the classification promulgated July 11, 1902. Had the relator's appointment antedated the classification of the position of detective sergeant, he might probably have held his position without the necessity of submitting to a civil service examination. Matter of Sugden v. Partridge, 174 N. Y. 87, 66 N. E. 655. His appointment, however, did not occur until the 7th day of February, 1903. Prior to that date the relator had been a roundsman, and his appointment as detective sergeant was, as will be shown, a promotion.

Section 9 of article 5 of the Constitution of the state of New York provides:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive: provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

To provide for the enforcement of this constitutional provision, chapter 370, p. 795, of the Laws of 1899, known as the "Civil Service Law," was passed. Section 15 of that chapter provides as follows:

"Promotion, Transfer, Reinstatement, Reduction.—Vacancies in positions in the competitive class shall be filled, so far as practicable, by promotion from among persons holding positions in a lower grade in the department, office or institution in which the vacancy exists. Promotions shall be based upon merit and competition and upon the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority. For the purposes of this section an increase in the salary or other

compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion. * * * Nor shall a person be promoted or transferred to a position for original entrance to which there is required by this act or the rules an examination involving essential tests or qualifications different from or higher than those required for original entrance to the position held by such person, unless he shall have passed the examination or attained a place upon the eligible list for such higher position."

It is clear from this section, and from the interpretation placed by this court upon the constitutional provision we have referred to in People ex rel. Campbell v. Partridge, 89 App. Div. 497, 85 N. Y. Supp. 853, affirmed 179 N. Y. 530, 71 N. E. 1136, that the assignment of the relator to be a detective sergeant was a promotion within the meaning of that term as used in article 5, § 9, supra. It was held in the Campbell Case that the permanent assignment of a patrolman to serve as a telegraph operator in the telegraph bureau of the police force, the assignment carrying with it by statute the rank and salary of a police sergeant, constitutes a promotion, and by virtue of the constitutional provision (ut supra) and the civil service law is invalid, except as made after a civil service examination. The designation of the relator as a detective sergeant carried with it advancement in position, enchancement of salary, and preferment. The salary of a roundsman is by the charter limited to $1,500 per year, while a detective sergeant receives an annual compensation of $2,000. Section 299 of the charter, supra. Inasmuch as the position of detective sergeant had prior to the relator's appointment as such been classified in the competitive schedule, and the classification promulgated, his appointment was without validity, in the absence of a civil service examination.

The order must be reversed, with $10 costs and disbursements, and the motion denied, with costs.

WOODWARD, J., votes to affirm on the opinion of Maddox, J., at Special Term.