OPINION OF THE COURT
Bellacosa, J.
Pursuant to Civil Service Law § 58 (4) (c) (L 1990, ch 29), a police officer, who temporarily served as a detective for more than 18 months, sued and was granted a promotional "appointment” to the rank of detective in the Rochester Police Department. We conclude that the statutory directive on which that judicial ruling rests violates the overriding constitutional prerequisite of article V, § 6, that appointments or promotions within the State civil service system be merit-based and determined, where practicable, by competitive examination. Consequently, we reverse the order of the Appellate Division.
L
Petitioner, a Rochester police officer, was temporarily assigned to investigative duties and performed these duties for approximately 18 months. The department thereafter terminated his assignment. The officer sued, claiming that under Civil Service Law § 58 (4) (c) the 18-month period he had spent performing temporarily assigned investigative duties matured automatically into a permanent detective appointment. The City of Rochester resisted, including on the ground that Civil *242 Service Law § 58 (4) (c) violated the merit and fitness requirement of article V, § 6 of the New York Constitution.
Supreme Court granted the petition and ordered the officer’s appointment as a detective with a retroactive salary award. The Appellate Division affirmed, with two Justices dissenting (199 AD2d 1026). The majority found no constitutional infirmity, asserting that once an officer had served as a detective for 18 months, competitive testing for the position was not practicable and that the capacity and fitness to serve as a detective could “better be assessed by a review of the officer’s extended period of on-the-job performance” (id., at 1027). The two dissenters, however, concluded that the Legislature’s failure to address the practicability of competitive testing for detective positions rendered Civil Service Law §58 (4) (c) facially unconstitutional (id., at 1027). The dissenting Justices would have held that absent a supportable legislative determination of impracticability of testing, promotions or appointments could be made only by competitive examination, and that, therefore, the provision, pursuant to which petitioner was granted the appointment and promotion, transgressed article V, § 6 of the New York Constitution (id., at 1027-1028).
The City and its police department appeal as of right on the two Justices’ dissent (CPLR 5601 [a]) and constitutional (CPLR 5601 [b] [1]) grounds.
II.
Civil Service Law § 58 (4) (c) (L 1990, ch 29) directs that:
“Any person who has received permanent appointment as a police officer and is temporarily assigned to perform the duties of a detective shall, whenever such assignment exceeds eighteen months in duration, be appointed as a detective and receive the compensation ordinarily paid to a detective performing such duties” (emphasis added).
The enactment, by its terms, commands an appointment to the rank of detective, using the potent civil service action word of art. The command takes effect solely by the passage of time, when an officer has performed investigative or detective duties on temporary assignment for the predicate period of time.
Article V, § 6 of the New York Constitution, however, *243 articulates long-standing, well-settled State policy that appointments and promotions within the civil service system must be merit-based and, when "practicable,” determined by competitive examination (NY Const, art V, § 6). The constitutional dictate does not create an absolute bar to civil service appointments and promotions without competitive examinations (Matter of Sloat v Board of Examiners, 274 NY 367, 373; Matter of Sanger v Greene, 269 NY 33, 40). An untested appointment or promotion, however, must rest on (1) a legislative determination that ascertaining fitness by competitive examination is "impracticable” (Matter of Andresen v Rice, 211 NY 271, 279); and (2) a sound, discernible basis supporting the Legislature’s determination of impracticability (id.; see also, Matter of Sanger v Greene, supra, at 40).
Because Civil Service Law §58 (4) (c) mandates both an appointment and promotion within the meaning of article V, §6 of the New York Constitution, and because there is no evidence whatsoever of a legislative consideration or determination of impracticability of testing for the detective rank, the enactment fails its constitutional threshold.
III.
At the outset, we conclude that Civil Service Law § 58 (4) (c) effects a mandate to municipal employers to appoint an officer to the position of detective. This constitutes an actual "appointment” and "promotion” within the meaning of article V, § 6 of the New York Constitution. Indeed, that is precisely what the lower courts ruled in granting the petitioner officer the relief he sought under the statute. When an appointment is meant to be permanent, or when it carries with it an " 'advancement to a higher position, grade, class or rank [or] preferment in honor or dignity’ ” (commonly known and appreciated as a "promotion”), the placement of a worker in that position is an appointment or promotion, requiring merit and fitness constitutional scrutiny, satisfaction or explicit dispensation (NY Const, art V, § 6; see, Civil Service Law § 52 [9]; People ex rel. Campbell v Partridge, 89 App Div 497, 499, affd 179 NY 530; People ex rel. Gilhooly v McAdoo, 108 App Div 1, 4-5, affd 185 NY 537; see also, Hale v Worstell, 185 NY 247, 253).
The plain language of Civil Service Law § 58 (4) (c), the legal operation of the statute, its legislative history and the implementation by the courts below — which are disregarded by the *244 dissent — uniformly support our conclusion that the challenged statute mandates an appointment or promotion governed by article V, §6 of the New York Constitution. The statute’s facially plain wording uses the operative term of art "be appointed” (Civil Service Law § 58 [4] [c]). We are instructed to " 'construe [statutes] so as to give effect to the plain meaning of the words used’ ” (Doctors Council v New York City Employees' Retirement Sys., 71 NY2d 669, 675, quoting Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208). This precept is even more compelling when coupled with a supervening constitutional imperative, like the Merit and Fitness Clause.
Even were the term deemed ambiguous — an unsupportable conclusion in our view — an examination of the statute’s legislative history demonstrably discloses that the statutory provision is meant to effect a permanent appointment or a promotion or both. It thus falls within the prohibitive orbit of the constitutional protection by that line of interpretive analysis as well.
The statute’s singular goal was "[t]o insure that police officers who perform the duties of a detective o[n] a temporary basis (exceeding 18 months) be compensated as detectives and permanently appointed as a detective” (Mem in Support, Bill Jacket, L 1990, ch 29 [emphasis added]). The bill was pursued and designed to alleviate perceived morale and inequity problems arising from such temporary assignments, when officers were forced to work for long periods of time side by side with "rank” detectives but without commensurate security, pay, and benefits (see, Mem in Support, op. cit.; Sponsor’s Mem, Bill Jacket, L 1990, ch 29). The legislative history reflects that, if enacted, the bill would effect the permanent appointment or "designation” to the rank of detective of such temporarily assigned officers (see, Mem in Support, op. cit.; Sponsor’s Mem, Bill Jacket, L 1990, ch 29 [distinguishing between "truly temporary assignments” and those mandated by the bill]; Mayor Dinkins Mem in Opposition, Bill Jacket, L 1990, ch 29 [objecting to bill’s "permanent appointment” of temporarily assigned officers]; NYS Conference of Mayors and Other Municipal Officials, Mem in Opposition, Bill Jacket, L 1990, ch 29 [objecting to the bill’s converting an "administrative assignment” into an "appointment”]; Suffolk County Patrolmen’s Benevolent Assn, Mem in Support, Bill Jacket, L 1990, ch 29 [referring to the appointment mandated by the bill as a "designation”]). While a party attacking the facial constitu *245 tionality of a statute bears a heavy burden (McGowan v Burstein, 71 NY2d 729, 732-733), courts are not at liberty to save a statute by, in effect, rewriting it in a manner that contravenes its plain wording as well as its unambiguously articulated legislative purpose (Ivey v State of New York, 80 NY2d 474, 480; Morgenthau v Citisource, Inc., 68 NY2d 211, 223; People v Smith, 63 NY2d 41, 79, cert denied 469 US 1227; see also, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 92, 94, 96).
Civil Service Law § 58 (4) (c) ultimately overrode the filed Bill Jacket objections and effected the very result guarded against by civil service merit and fitness principles and protections. A police officer appointed pursuant to the challenged statute stands in the same position as an officer who is appointed or promoted after being subjected to existing competitive testing procedures for the rank of detective. Appointment by the alternative statutory route thus allows temporarily assigned officers to achieve the higher salaried, preferred status of detective without submitting to the competitive examination applicable to everyone else (see, Civil Service Law § 58 [4] [c]). The will of the Legislature, motivated by those who pursued this enactment even for arguably well-intentioned purposes, brings about a displacement of the higher constitutional imperative and an unauthorized preferential appointment or advancement.
IV.
Civil Service Law § 75 (1) (e) cannot rescue section 58 (4) (c). The former provides that one "holding the position of detective” does not obtain rights to a hearing for discharge for cause until the appointee has held the position for three years. On this basis, for example, it has been held that no tenure attaches to the detective position upon appointment or promotion and that, therefore, the position is not a true appointment or promotion within the meaning of article V, § 6 (see, Matter of Suffolk County Patrolmen’s Benevolent Assn. v Guido, Sup Ct, Suffolk County, Feb. 11, 1993, Lama, J., index No. 91-3807). That rationale is distinguishable and, in any event, does not withstand analysis as applied to the statute under review and with respect to the precise appointment issue of this case.
The time of vesting of a detective’s rights to a "for-cause” removal hearing is simply not determinative of the nature of *246 the appointment action mandated by Civil Service Law § 58 (4) (c). To be promoted or appointed to the detective position, regular applicants in many parts of the State, including Rochester, are competitively tested — a significant fact devalued by the dissent. Those who succeed and are advanced to the post are then given the rank, benefits, and preferred status of detective. At that juncture, all the indicia of an appointment or promotion take hold. The appointment or promotion springs to life when these indicia of higher, preferred status attach, notwithstanding the fact that rights to a removal hearing remain inchoate for three more years. Since the appointment made under Civil Service Law § 58 (4) (c) provides officers with the identical, equivalent detective status, the appointment or promotion for constitutional purposes occurs when the employee’s status rises from that of an ordinary officer to that of detective. The attributes and consequences of the permanent appointment mandated by Civil Service Law § 58 (4) (c) — enhanced pay, benefits, and dignity of position — are thus pertinent to and dispositive of the question at hand. Consequently, we hold that the appointment mandated by Civil Service Law § 58 (4) (c) falls within article V, § 6 of the New York Constitution.
Civil Service Law § 75 (1) (e), itself, demonstrates the weakness in relying on vested hearing rights as a determinative factor in assessing the nature of the appointment mandated by Civil Service Law § 58 (4) (c). Civil Service Law § 75 (1) (e) provides that even where a detective has served for at least three years, no dismissal hearing is required when "reduction in rank from said position is based solely on reasons of the economy, consolidation or abolition of functions, curtailment of activities or otherwise.” Accepting the rationale of those courts that equate hearing rights with permanency of appointment would logically lead to the conclusion that the appointment or promotion to the detective rank could hardly ever be considered permanent, because discretionary type factors (i.e., "curtailment of activities”, "consolidation of functions”) could always lead to a reduction in rank without a hearing. Under such a "hearing rights” rationale, no appointments to detective rank could ever be considered truly permanent and, hence, such elevations in rank would never be deemed promotions or appointments for purposes of the Merit and Fitness Clause of the Constitution (NY Const, art V, § 6). Since this cannot be so, we reject the "hearing rights” rationale in the instant case. It is an unsupportable prop designed to save the *247 statute by ignoring the reality of the automatic appointment which is triggered by Civil Service Law § 58 (4) (c).
V.
Our conclusion in this regard is also supported by our reasoning and holdings from earlier cases involving the “designation” — permanent appointment — of police officers to the status or rank of detective. In People ex rel. Campbell v Partridge (179 NY 530, supra), we affirmed the ruling of the Appellate Division which invalidated as unconstitutional the designation of a patrol officer to the position of telegraph operator where that position “carried with it the rights and privileges * * * including * * * rank and pay of a sergeant” (89 App Div 497, 498). Finding the appointment to this position to be a promotion, the Appellate Division stated:
’’The designation of the relator, a patrolman, as telegraph operator, was intended to be permanent, and was, therefore, a promotion, for it carried with it advancement in rank and class, together with an advancement in the salary to be received by him” (id., at 499).
The Court noted that, without examination, patrol officers were not eligible for appointments of this status and that, consequently, the permanent appointment, which bypassed the examination requirement, violated the constitutional competitive testing mandate (People ex rel. Campbell v Partridge, supra, at 498-499; see also, People ex rel. Gilhooly v McAdoo, 108 App Div 1, 3-5, affd 185 NY 537, supra).
The case at bar contains markedly similar features: (1) competitive testing is currently administered annually in most parts of the State for the higher-ranked detective position; and (2) the challenged statute irrefutably bears the legislative intent that the appointment be permanent in lieu of any examination and with no finding of impracticability of testing —an understandably difficult hurdle, since testing is otherwise imposed for the identical rank and function in many parts of the State, including Rochester (see, Mem in Support, Bill Jacket, L 1990, ch 29).
VI.
The Legislature’s failure to assess the practicability of competitive testing for the detective rank renders unconstitu *248 tional the automatic appointment directive of Civil Service Law § 58 (4) (c) (see, NY Const, art V, §6). To be sure, a legislative enactment enjoys a strong presumption of constitutionality (Birkeland v State of New York, 98 AD2d 395, 398 [citing Borden's Co. v Baldwin, 293 US 194, 209, 210], affd 64 NY2d 663, 665). On the other hand, the specific constitutional requirement for competitive examination, where practicable, "may not be blinked [away] or avoided” (Matter of Board of Educ. v Nyguist, 31 NY2d 468, 472; compare, Flushing Natl. Bank v Municipal Assistance Corp., 40 NY2d 731, 739-740). In the instant case, the Legislature failed to address or articulate any impracticability of testing in the statute, and no such implied legislative finding can be gleaned from its legislative history.
We recognize that a legislative determination of "impracticability” need not be stated in the law itself. A statute may survive a constitutional challenge in this respect, however, only if (1) such a determination, at least, may be " 'assumed’ ” from " '[some] state of facts’ ” concerning the enactment of the legislation (see, Birkeland v State of New York, 98 AD2d 395, 398 [quoting United States v Carolene Prods. Co., 304 US 144, 154], affd 64 NY2d 663, supra); and (2) the ultimate explicit or implied finding of impracticability of testing is supportable (Matter of Sanger v Greene, 269 NY 33, 40, supra). Neither circumstance is satisfied in the case at bar, and thus petitioner’s claim fails. Indeed, the opposite conclusion is plain. Testing for detective is common and, no doubt, was a fact known to the Legislature in the constellation of factors promoting this legislation.
Moreover, a legislative determination of impracticability of testing cannot be gleaned either explicitly or impliedly from the "state of facts” of this case (see, Birkeland v State of New York, 98 AD2d 395, 398, affd 64 NY2d 663, supra). The legislative history of the bill demonstrates the opposite conclusion, as we noted earlier.
Were it possible to garner enough evidence from the record to support the conclusion that the Legislature did determine such testing to be impracticable, that legislative determination would not pass scrutiny in the instant case. "Practicability” denotes the ability to objectively test the applicant’s capacity and fitness to serve in the position sought and requires an assessment of the character of the required duties of the particular position (Matter of Fink v Finegan, 270 NY 356, *249 361-362; see also, McGowan v Burstein, 71 NY2d 729, 734-735, supra; People ex rel. Sweet v Lyman, 157 NY 368, 382; Matter of Condell v Jorling, 151 AD2d 88, 93). While the character of the position may constitutionally allow for dispensing with the examination requirement, either in whole or in part, noncompetitive appointments are the exception, not the rule (Matter of Andresen v Rice, 277 NY 271, 276, supra).
The practicability of competitive testing for the rank of detective is manifest in the instant case. Competitive examinations have been held generally practicable for State and local law enforcement personnel (id., at 281), with few exceptions, including New York City (compare, Matter of Scotto v Dinkins, 85 NY2d 209 [involving a different statute and decided today on nonconstitutional grounds]). The existence of annual competitive testing for the detective rank belies any assertion that an officer’s fitness for the position cannot be assessed, at least to some degree, by competitive examination. Because the qualifications for the position of detective are measurable, to some extent, by competitive examination, the Legislature would be hard put to declare impracticability by simple fiat (McGowan v Burstein, 71 NY2d 729, 734-735, supra; Matter of Fink v Finegan, 270 NY 356, 362-363, supra).
Finally, we disagree with the Appellate Division’s rationale dispensing with competitive testing on the basis that on-the-job performance was a better indicator of merit and fitness. While in some exceptional, appropriate circumstances on-the-job performance may be used to assess merit and fitness, the constitutional requirement to competitively test where practicable “may not be blinked [away] * * * simply upon the basis of * * * satisfactory performance during temporary or 'out-of-title’ service in [a] higher position” (Matter of Board of Educ. v Nyquist, 31 NY2d 468, 472, supra). Notwithstanding a public employee’s satisfactory on-the-job performance, when qualifications are subject, even in part, to objective assessment, those objectively testable qualities must be evaluated by competitive examination (see, McGowan v Burstein, 71 NY2d 729, 734-735, supra; Matter of Board of Educ. v Nyquist, supra, at 471, 474). While untestable attributes may be considered and included as components of a complete evaluation of merit and fitness (McGowan v Burstein, supra, at 735), and while alternative noncompetitive measures of fitness may be employed to assess those more subjective attributes (Matter of Sloat v Board of Examiners, 274 NY 367, 372-373, supra), the constitutional requirement to test competitively for *250 objectively ascertainable qualities may not be summarily evaded by the Legislature or by the courts (see, McGowan v Burstein, supra, at 734-735).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Levine, J. (dissenting). We respectfully dissent. In this case, the Court has before it a purely facial challenge to the constitutionality of only one provision of the Civil Service Law, section 58 (4) (c), under the Merit and Fitness Clause of the State Constitution (NY Const, art V, § 6). A party making such a facial challenge bears an exceptionally heavy burden.
"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid” (United States v Salerno, 481 US 739, 745).
This Court in McGowan v Burstein (71 NY2d 729) imposed that same arduous responsibility with respect to a facial attack grounded upon article V, § 6 of the State Constitution, holding that "[t]o sustain their challenge * * * plaintiifs must demonstrate that zone scoring [of competitive civil service examinations] in any degree and in every conceivable application would be unconstitutional” (id., at 733).
In our view, respondents have failed to meet that exacting standard. The majority’s conclusion that every conceivable application of Civil Service Law § 58 (4) (c) would violate the Merit and Fitness Clause is based upon two premises. The first of these is that section 58 (4) (c) mandates a permanent appointment to the position of detective. The statute does not expressly require that an appointment as a detective shall be permanent. While the majority relies heavily on the legislative use of the word "appoint” as a civil service term of art connoting permanency (majority opn, at 244), and thereby invoking the constitutional imperatives of the Merit and Fitness Clause, under the Civil Service Law, permanency is not a necessarily implied concomitant to an appointment. Thus, initial appointments to positions in the competitive class are not permanent, but probationary (Civil Service Law § 63 [1]). Moreover, State and municipal civil service commissions *251 can and do provide by rule that appointments to positions in the exempt, noncompetitive or labor classes are not initially permanent (id..).
The majority also recognizes that, despite the use of identical "appointment” language in the parallel New York City Police Department legislation (L 1990, ch 755; Administrative Code of City of NY § 14-103 [b] [2]; see, Matter of Scotto v Dinkins, 85 NY2d 209 [decided today]), a police officer in that department who has performed the duties of a detective for 18 months achieves the status of detective not by appointment but by "designation” (majority opn, at —). Furthermore, until three years have elapsed following that designation (thereby giving rise to statutory tenure rights under Civil Service Law § 75 [1] [e]), "[t]he [police] commissioner may at his or her pleasure revoke any designation” (Administrative Code § 14-103 [e]).*
Similarly, assignments to the Detective Division of the New York City Transit Authority Police Department are not by appointment, but exclusively by detail, which may also be revoked (Public Authorities Law § 1204 [16]).
Moreover, just as in the case of the New York City Police Department and the New York City Transit Authority, it is apparently common that no permanent, classified civil service position of detective (or, as in the case of the City of Rochester, investigator), has been set up by legislation or the civil service commission having jurisdiction (see, Matter of Barresi v Mahoney, 192 AD2d 649, lv denied 82 NY2d 656; Matter of Greensmith v Incorporated Vil. of Centre Is., 109 AD2d 742). In such instances of assignment, detail or designation rather than appointment to a classified civil service detective position, there is no service of an initial probationary period.
As the foregoing demonstrates, Civil Service Law §.58 (4) (c) does not by itself mandate tenure for detective "appointments”. It does not require the creation of a permanent, classified position of detective in every jurisdiction. Nor does the section set up a framework whereby eligible officers serve a probationary term ripening in time into a permanent position of detective. Therefore, irrespective of what its legislative sponsors may have intended, in no meaningful civil service sense does section 58 (4) (c) require a permanent appointment *252 to the rank of detective in every jurisdiction. Accordingly, permanency is not, in our view, a valid ratio decidendi for declaring the section facially invalid.
The majority’s alternative rationale for finding no conceivable set of circumstances in which section 58 (4) (c) could be constitutionally applied is that it necessarily entails a " 'promotion’ * * * [i.e.,] an ' "advancement to a higher position, grade, class or rank [or] preferment in honor or dignity” ’ ” (majority opn, at 243). Undoubtedly, detective duty is a coveted assignment and may carry with it additional compensation. The majority apparently holds that these factors automatically in all cases trigger a constitutionally required separate, classified position of detective, to be tested for by competitive examination in the absence of demonstrated impracticability. In deciding whether this is so, it is well to follow Judge Fuchsberg’s admonition in McGowan v Mayor of City of N Y. (53 NY2d 86, 94), a case also involving assignments to detective duties, "[t]o paraphrase Justice Holmes, this case is one in which a page of history may be worth even more than a volume of logic”.
Historically, the New York courts have especially deferred to the judgment and expertise of the Legislature or appropriate civil service body in determining how to classify for civil service purposes the performance of the criminal investigative role of law enforcement officer. That deference has continued to modern times. Thus, in Matter of Dillon v Nassau County Civ. Serv. Commn. (43 NY2d 574, 582) we held:
"[I]t is not decisive that in some other counties, because of the possible or likely variation in local circumstances, all criminal investigators are classified exempt. There is a measure of flexibility allowed a civil service commission, beyond judicial review, in deciding whether to classify investigators 'exempt’, and how many to so classify. While in some counties all investigators are classified exempt, in others all are classified competitive, and in still others * * * there is a combination of classifications. The difference in treatment, taken alone, does not establish that any one classification or that the State-wide pattern is arbitrary. Instead, a petitioner must show that the determination by which he feels aggrieved cannot stand on any reasonable basis. Or a petitioner must show at *253 least that the State-wide pattern is not based legitimately on local variations in conditions, office organization, availability and use of coexistent police resources, and the like”.
More specifically for purposes of the instant case, this Court has repeatedly sanctioned legislative or civil service commission treatment of the transfer of police personnel to detective duties, whether or not carrying increases in compensation, not as formal promotions to new positions, but as assignments within the general duties of a police officer. Thus, in Matter of Sugden v Partridge (174 NY 87) and Matter of Fay v Partridge (174 NY 526) this Court dealt with constitutional challenges to a statute amending the New York City Charter regarding the "central office bureau of detectives” in the City of New York and directing the Police Commissioner to " 'select and appoint to perform detective duty therein from the patrolmen and roundsmen * * * to draw and be paid the same pay as other sergeants of police’ ” (174 NY, at 92, supra [emphasis supplied]). In Matter of Fay v Partridge the Court stated that the legislation did "not, in any proper sense, create a distinct office or provide for filling it. There may be in the police force patrolmen, roundsmen and detectives, but they are all policemen and nothing else in the eye of the law * * *. What the statute in question did was to provide for the organization of a bureau to be known as a detective bureau; that is to say, it provided for the assignment of a certain designated class of policemen to certain designated duties. The class so selected was called detectives, and as a body they constituted the detective bureau, but they were policemen all the time and nothing else” (supra, at 527-528).
In Matter of Sugden v Partridge, the Court rejected the claim that appointment of detective sergeants under the act violated the Merit and Fitness Clause of the Constitution, because the act did not create a new office and the petitioner was designated as a detective sergeant before the municipal civil service commission determined that it was a separate office to be filled by competitive examination (174 NY, at 96-97, supra).
Consistently with the rationale of Matter of Fay v Partridge and Matter of Sugden v Partridge, on every occasion when the issue has been before us, we have rejected claims that detailing uniformed officers to detective responsibilities for indefinite periods without formal promotion and a commensurate *254 salary increase, necessarily violated article V, §6 of the Constitution or unlawfully required the assigned officers to perform out-of-title duties (see, Matter of Hagan v Murphy, 14 NY2d 701, affg 19 AD2d 862, affg 39 Misc 2d 82; Matter of Detective Endowment Assn. v Leary, 30 NY2d 577, affg 36 AD2d 289; see also, McGowan v Mayor of City of N. Y, 53 NY2d 86, supra). The basic reasoning of these decisions has been that the Legislature or the appropriate civil service authority may lawfully choose to treat detective investigative duties as part of the general function of a police officer and within the job description of that position.
"Assignment of a patrolmen to the Detective Division does not involve the transfer to a position requiring an examination or involving tests or qualifications different from or higher than those required for the position of patrolman” (Matter of Detective Endowment Assn, v Leary, 36 AD2d, at 290-291, supra).
In reliance on these precedents, municipal civil service commissions have approved the organization of police agencies in which investigative or detective delegations of responsibility are not defined as separate, classified permanent civil service positions but as assignments or details within a classified uniformed position; and on that basis the courts have upheld discretionary appointments to or removals from those assignments without civil service tests or required hearings (see, Matter of Barresi v Mahoney, 192 AD2d 649, supra; Matter of Greensmith v Incorporated Vil. of Centre Is., 109 AD2d 742, supra). It follows from the foregoing that certainly as to those police agencies where assignment to a detective unit does not entail the performance of the duties of a separately classified civil service investigative position created by legislation or commission determination, the application of Civil Service Law § 58 (4) (c) does not violate the Merit and Fitness Clause of our Constitution. It would merely require the formalization of the assignment as an "appointment”, but within the general functions of a police officer’s position, with commensurate compensation, not unlike the legislation upheld in Matter of Sugden v Partridge (supra) and Matter of Fay v Partridge (supra). This was precisely the position taken by the State Civil Service Commission in approving the bill enacting section 58 (4) (c):
*255 "We understand that the intent of this bill is to ensure that those serving as detectives receive the wages normally associated with such an assignment. However, the bill also provides that after eighteen months assignment as a detective, a police officer must be 'appointed’ to that title.
"We suspect that the drafters of this measure intended it to apply where service as a detective is an assignment. In situations where 'detective’ is a distinct title, tested for on a competitive basis, no individual can be appointed permanently unless he or she passes the required tests and becomes reachable on an eligible list, as required by Article V, Section 6 of the State Constitution” (Letter from Dept of Civil Service, Bill Jacket, L 1990, ch 29, at 22 [emphasis supplied]).
Thus, unless the majority intends to overrule sub silentio an entire line of cases approving detective assignments within the general civil service classification of police officer, there are not only conceivable, but actually existing situations where Civil Service Law § 58 (4) (c) can be validly applied and, therefore, the statute should withstand this facial challenge.
As we have already noted, however, section 58 (4) (c) does not mandate a permanent appointment to the rank of detective upon service in that capacity for 18 months. Consequently, although petitioner was entitled to be appointed an investigator on September 23, 1990, the effective date of the statute (by reason of his prior continuous years of performing investigative duties), and to an investigator’s compensation from that date, the section did not prevent respondents from reassigning him to a uniformed platoon on January 28, 1991. Therefore, we would modify the judgment by declaring that respondents have not established the facial invalidity of Civil Service Law § 58 (4) (c), by deleting therefrom the directive to respondents to appoint petitioner to the position of investigator and by limiting the directive to respondents to pay petitioner such amounts as to equalize his compensation with that of an investigator for the period from September 23, 1990 to January 28, 1991.
Chief Judge Kaye and Judges Simons and Titone concur with Judge Bellacosa; Judge Levine dissents in a separate opinion in which Judges Smith and Ciparick concur.
Order reversed, etc.

 Tenured detectives are, like other tenured civil servants, still subject to the elimination or reduction of positions due to "economy, consolidation or abolition of functions [etc.]” (see, Civil Service Law § 75 [1] [e]; §§ 80, 80-a).