Alan F. HAEUSER, Plaintiff–Appellant,

v.

DEPARTMENT OF LAW, GOVERNMENT OF GUAM; Civil Service Commission of Guam, Defendants–Appellees.

No. 94–16987.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1996.

Filed Oct. 8, 1996.

Mitchell F. Thompson, Maher & Thompson, Agana, Guam, for plaintiff-appellant.

Patrick Mason, Deputy Attorney General, Office of the Attorney General, Prosecution Division, Agana, Guam, for defendants-appellees.

Before: FLETCHER, D.W. NELSON and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Alan Haeuser appeals from an order of the district court, appellate division, affirming the superior court's denial of his petition for writ of mandate. Haeuser was terminated from his position as an assistant attorney general in the Guam Department of Law after fourteen months employment. Pursuant to Public Law 19–52, 4 Guam Code Ann. § 6208.1 ("section 6208.1"), assistant attorneys general are placed in the "unclassified" service, have a two-year probation period, and cannot appeal an adverse employment action to the Civil Service Commission. By contrast, the majority of Guam government employees are "classified" and therefore have

only a six-month probation period and can appeal their terminations to the Civil Service Commission. Haeuser contends that section 6208.1's exemption of assistant attorneys general from the classified service violates the Organic Act, 48 U.S.C. § 1422c(a), which directs the government of Guam to establish a merit system and, as far as practicable, to make employment decisions in accordance with such system.

We agree. Because the record reflects no reasonable basis for the legislature to have determined that it is impracticable to include assistant attorneys general in the classified service, section 6208.1's exemption of assistant attorneys general violates the Organic Act. We reverse and remand.

## I

Haeuser was hired as an assistant attorney general (Attorney III) by the Guam Department of Law on February 5, 1990.[1] His job duties were in the family law division. Pursuant to section 6208.1, he was an unclassified employee with a probation term of two years.

Haeuser was dismissed from employment on April 1, 1991. He timely appealed his dismissal to the Civil Service Commission of Guam. The Civil Service Commission dismissed his appeal for lack of jurisdiction because he was an unclassified employee. The Civil Service Commission noted Haeuser's challenge to the validity of section 6208.1 but concluded that only the courts could determine whether the statute violated the Organic Act.

Haeuser then petitioned for a writ of mandate in the Superior Court of Guam, contending that section 6208.1 violated the Equal Protection Clause and the Organic Act. The superior court issued an order to show cause why the writ should not be granted. The Department responded and filed a motion to dismiss the petition. The court denied the Department's motion to dismiss the petition summarily and ordered an evidentiary hearing. An evidentiary hearing was held on October 30, 1992.

On January 7, 1994, the superior court denied Haeuser's petition. The court found no equal protection violation. The court did not address explicitly Haeuser's Organic Act challenge. Haeuser appealed to the appellate division of the district court, which affirmed. It found no violation of equal protection or the Organic Act. The district court did not inquire whether the legislature had a reasonable basis for determining that it was impracticable to place assistant attorneys general within the merit system, instead concluding that "it is enough simply that the Attorney General recognized the need to hire new assistants in the unclassified service, requested the Legislature to enact legislation allowing her to do so, and that the legislature did in fact pass such legislation." On appeal before this court, Haeuser has abandoned his equal protection challenge and pursues only his Organic Act claim.

## II

The superior court had jurisdiction under 48 U.S.C. § 1424–1 and 7 Guam Code Ann. § 4101. The appellate division of the District Court of Guam had jurisdiction under 48 U.S.C. § 1424–3(a). This court has jurisdiction under 48 U.S.C. § 1424–3(c).

## III

We ordinarily review the denial of mandamus for an abuse of discretion. *Davis v. United States*, 961 F.2d 867, 878 (9th Cir.1992), *cert. denied*, 506 U.S. 1050, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). Whether Haeuser has met the requirements for the issuance of mandamus, however, is a question of law reviewed de novo. *See Fallini v.*

---

1. We note that the term "assistant attorney general" has different meanings in different jurisdictions. Assistant attorneys general in Guam are regular staff attorneys, both civil and criminal, performing functions much like those of assistant United States attorneys in regional offices around the United States. Government counsel at oral argument represented that the Department of Law is divided into four divisions: civil, solicitors, prosecution, and family. The Attorney General heads the Department, assisted by a Chief Deputy, with four deputies in charge of each of the four divisions, and assistant attorneys general working under the deputies in each of the four divisions.

*Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986). In order for mandate to lie, "the applicant for the writ [must have] a present interest in the remedy he seeks and the respondent [must have] a present duty to perform the acts the applicant seeks to compel." *Lungren v. Deukmejian,* 45 Cal.3d 727, 248 Cal.Rptr. 115, 117, 755 P.2d 299, 301 (1988). When a petitioner has established compliance with the requirements of a writ, he may be entitled to a writ as a matter of right. *Flora Crane Service v. Ross,* 61 Cal.2d 199, 37 Cal.Rptr. 425, 427–28, 390 P.2d 193, 195–96 (1964). Haeuser's petition is premised on the assertion that the statute pursuant to which he was employed as an unclassified employee unprotected by the merit system violates the Organic Act. We review this claim de novo. *See Twenty–Three Nineteen Creekside, Inc. v. Commissioner of Internal Revenue,* 59 F.3d 130, 131 (9th Cir.1995) (questions of law reviewed de novo), *cert. denied,* —— U.S. ——, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996); *National Collegiate Athletic Ass'n v. Miller,* 10 F.3d 633, 637 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994) (challenge to the constitutionality of a statute reviewed de novo).

## IV

The Organic Act, by which Congress established "a civil government in the American pattern for inhabitants of Guam," 1950 U.S.Code Cong. Serv. 2840, provides in relevant part:

> The legislature [of Guam] shall establish a merit system and, as far as practicable, appointments and promotions shall be made in accordance with such merit system. The Government of Guam may by law establish a Civil Service Commission to administer the merit system.

48 U.S.C. § 1422c(a). Neither the Act nor the legislative history provides a definition of "merit system" or "practicable." A merit system is generally considered to encompass job protection for employees, including the ability to appeal adverse employment decisions. A "merit system" has been defined as "[a] system of promoting and appointing civil service personnel on the basis of merit, determined by competitive examinations." *Webster's II: New Riverside University Dictionary* 743 (1988). "Practicable" has been defined as "[c]apable of being done: FEASIBLE." *Id.* at 923.

The Guam legislature has passed various laws implementing this provision of the Organic Act. It has established that "[e]mployment in the service of the government of Guam shall be based upon merit, and selection of employees shall be free of personal or political consideration." 4 Guam Code Ann. § 4101. All offices and employment in the government of Guam are divided into classified and unclassified services. *Id.* § 4102. The majority of employees are classified. The unclassified service included sixteen categories of employees, including elective officials, judges, heads of agencies, the first assistant to heads of agencies, and temporary employees. *Id.* § 4102(a)(1), (2), (4), (5), (6). The classified service includes all other positions in the government of Guam. *Id.* § 4102(b). Classified employees are subject to a three to twelve month probationary period during which they may be dismissed at any time without right of appeal and without being given written reasons for termination. *Id.* § 4106. Generally, the probation period is six months. Personnel Rule 7.00 (Dep't of Admin.1979). After classified employees have completed their probation period, specific procedures must be followed before they can be terminated. 4 Guam Code Ann. § 4106. Classified employees may appeal an adverse employment action such as a dismissal or demotion to the Civil Service Commission. *Id.* §§ 4106, 4406, 4407.

The assistant attorneys general in the Department of Law were formerly classified employees.[2] The position of assistant attorney general does not fall within one of the sixteen categories of employees exempted from the classified service. *Id.* § 4102(a). In 1989, however, the legislature enacted a

---

**2.** This classification was with the initial exception of "off-island" hires. Assistant attorneys general hired off the island of Guam were hired pursuant to two-year employment contracts with travel benefits. After the two-year contract period expired, off-island hires, if retained, became part of the classified service and were no longer employed pursuant to an employment contract.

rider to an airport bill which made newly-hired assistant attorneys general unclassified and increased their probation period to two years. *Id.* § 6208.1. Specifically, section 6208.1 provides:

> Notwithstanding any other provision of law, the Attorney General may hire Assistant Attorneys General necessary for the operation of the department. Attorneys shall be hired for an initial two-year probationary period in the unclassified service, which shall by the term of the appointment expire two years from the date of the appointment if not sooner terminated by the appointing authority. Attorneys reappointed after completion of their probationary period shall be employed in the unclassified service as provided under Section 4102(16) of Chapter 4 of this Title and may be removed only for cause. Attorneys presently in the classified service shall remain classified.

*Id.* As of 1992, there were approximately forty-five attorneys in the Department of Law, five of whom remained in the classified service because they were hired prior to enactment of section 6208.1, and forty of whom were unclassified. Government attorneys in other departments remain in the classified service. For example, the Public Defender Services Corporation employed eight staff attorneys in 1992, all of whom were classified. Although employees in the classified system are generally hired pursuant to examination, as is typical in a merit system, government attorneys—even those who are classified—have long been exempted from the requirement that appointments be made pursuant to examination. Haeuser does not challenge this exemption.

## V

■ The Organic Act serves the function of a constitution for Guam. Guam's self-government is constrained by the Organic Act, and the courts must invalidate Guam statutes in derogation of the Organic Act. *See, e.g., Territory of Guam v. Olsen,* 431 U.S. 195, 97 S.Ct. 1774, 52 L.Ed.2d 250 (1977) (holding that Guam statute creating the Supreme Court of Guam and transferring appellate jurisdiction away from the district court vio-

lated the Organic Act). Congress's command to the Guam legislature to set up a merit system for government employees is explicit: the legislature *shall* set up a merit system and, as far as practicable, appointments *shall* be made in accordance with such merit system. 48 U.S.C. § 1422c(a). If appointments are not made in accordance with the merit system, aggrieved individuals shall have recourse to the courts. *Cf. State ex rel. Murtagh v. Dep't of City Civil Serv.,* 215 La. 1007, 42 So.2d 65, 70 (1949) ("Civil Service Statutes are designed to secure adequate protection to public career employees from political discrimination. Unless the courts protect civil servants in their legislative rights, the civil service system of employment could easily be reduced to a mockery.") (citation omitted).

Courts in states with similar systems have subjected statutes purporting to exempt categories of employees from the merit system to judicial review, striking down those statutes in which the legislature did not have a reasonable basis for concluding that it was impracticable to include certain employees within the merit system. *See Ottinger v. Civil Serv. Comm'n,* 240 N.Y. 435, 148 N.E. 627 (1925) (striking down statute which permitted Attorney General to appoint and remove employees, in his discretion and without civil service examination, as violative of provision of the New York Constitution requiring that appointments and promotions in the civil service of the state be made according to merit); *Murtagh,* 42 So.2d at 70. The New York Court of Appeals has set forth a useful framework for analyzing whether a statute violates New York's constitutional provision that appointments and promotion within the civil service system must be merit-based and, as far as practicable, based on examination:

> To be sure, a legislative enactment enjoys a strong presumption of constitutionality. On the other hand, the specific constitutional requirement for competitive examination, where practicable, "may not be blinked [away] or avoided"....

> We recognize that a legislative determination of "impracticability" need not be stated in the law itself. A statute may

survive a constitutional challenge in this respect, however, only if (1) such a determination, at least, may be "'assumed'" from "'[some] state of facts'" concerning the enactment of the legislation; and (2) the ultimate explicit or implied finding of impracticability of testing is supportable. *Wood v. Irving,* 85 N.Y.2d 238, 623 N.Y.S.2d 824, 827–30, 647 N.E.2d 1332, 1337–38 (1995) (citations omitted); *cf. Murtagh,* 42 So.2d at 71 ("[I]t has been recognized wherever the merit system is in existence that certain exemptions may be provided for *if they are founded upon a substantial reason.*") (emphasis added).

 We agree with the analysis of the New York Court of Appeals in *Wood.* While we generally defer to the Guam legislature's judgment regarding the administration of its civil service system, we must still inquire (1) whether the legislature in fact determined that it would be impracticable to include a particular job position within the merit protections of that system; and, if so, (2) whether the legislature had a reasonable basis for its determination. Thus, although we do not micromanage Guam's civil service system, we must ensure that the legislature had a reasonable basis for concluding that it was impracticable to include assistant attorneys general within the classified system. Our inquiry is somewhat like "rational basis review," *see Heller v. Doe,* 509 U.S. 312, 319–21, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257 (1993), but stricter and more focused. The government cannot exempt a position from the merit system simply for "some legitimate governmental purpose," *id.* at 320, 113 S.Ct. at 2642, but only if it is "impracticable" to include the position within the merit system. If it is "practicable" to include the position within the merit system, the position must be included in the merit system. *See* 48 U.S.C. § 1422c(a). Moreover, the government cannot rely on mere assertions as to the imprac-

ticability of including the position within the merit system. Rather, it must demonstrate-either in the legislative record or in the record before the court-that it is not practicable to include assistant attorneys general within the merit system. *See Ottinger,* 148 N.E. at 628 ("What [the limit of the practicable] is may not be determined as an abstraction, or irrespective of experience.... To know the limit of the practicable, we must give heed to methods and institutions that are functioning in practice."); *Murtagh,* 42 So.2d at 71 ("[A] statute purporting to exclude any group of state employees from the operation of the civil service law must demonstrate that it is impractical to include the excluded group with the Civil Service."); *cf.* Guam Attorney General Opinion 79–001 (Jan. 4, 1979) ("The burden is on the person attempting to avoid the merit system to establish that compliance is impracticable."). Only if the government demonstrates a reasonable basis for concluding that it is impracticable to include a position within the classified system does the exemption of that position from the classified system satisfy the Organic Act.

## VI

 As a preliminary matter, the government argues that assistant attorneys general are not really outside the merit system even though they, unlike other employees in the merit system, cannot appeal an adverse employment decision to the Civil Service Commission, because they still may be removed only "for cause." We disagree. The Guam legislature has declared that all employment shall be "by merit," but if employees are exempted from the procedural protections of the merit system-particularly the right to appeal their dismissal to an independent civil service commission-the unenforceable, abstract right not to be fired without cause does little good.[3] The government thus must

---

**3.** The Attorney General testified that an assistant attorney general might be able to appeal his termination to some body or a court of law after completion of the two year probation period. Counsel for the government speculated that the Attorney General might set up some body to hear an appeal. However, it is clear that the statute provides no appeal rights and that there are no administrative procedures currently in place for

such. Classified employees can appeal their termination because the statute sets up a civil service commission and gives them appeal rights to that commission. Section 6208.1 removes that protection for assistant attorneys general without adding any new protection. At least in the federal civil service context, the Supreme Court has held that an employee who is exempted from the classified service has no property interest to be

demonstrate that assistant attorneys general cannot practicably be given the same merit protections as other government employees.

There is no legislative history regarding section 6208.1. No testimony was given and no public hearing was held regarding the provision. In passing section 6208.1, the legislature made no factual findings respecting "impracticability" and did not set forth any reason why assistant attorneys general, unlike most other government employees, should not be protected by the merit system. Under *Wood*, 623 N.Y.S.2d at 830, 647 N.E.2d at 1338, although a legislative determination of "impracticability" need not be stated in the law itself, a statute may survive a constitutional challenge only if "(1) such a determination, at least, may be 'assumed' from '[some] state of facts' concerning the enactment of the legislation;" and (2) such a finding is supportable. Here, we question whether a legislative determination of "impracticability" may even be assumed. There is no evidence that the legislature itself believed that it was impracticable to include assistant attorneys general within the classified system. Even after the fact, government witnesses are unclear exactly why section 6208.1 was enacted. The only evidence in the record as to the legislature's reason for exempting assistant attorneys general from the classification system comes from the Attorney General's testimony before the superior court. The Attorney General explained that Public Law 19–52 (now codified at 4 Guam Code Ann. §§ 6208 & 6208.1) was the "brainchild of Senator Parkinson." She testified:

> I looked at it; discussed it with some of the deputies, and sometimes with Senator Parkinson. You don't know if it's good or bad, but you cross your fingers and agree, because I knew we needed a salary increase. And I told Senator Parkinson "I can't see anything objectionable about it."
>
> . . .

The primary intent of that was, I think, the Senator's perspective to give a salary increase. The additional parameters of maintaining all attorneys—uh, excuse me, I do remember talking to Senator Parkinson about my concern of unclassified attorneys. And he did agree with me, at that time, just in my discussions with him—he said I was going to have everyone on contract, and his position was "Well, just have it a two-year probationary period unclassified, and if the attorney does well, then you keep him; if he doesn't then you don't keep the attorney." So I said I agreed. He says you don't have to keep them "on contract." So when we hire on-island, we don't do a contract. We do regular GG1, but unclassified. But when we hire from off-island, we still have the other provision of law that we must have a contract because of the transportation and the housing benefit. So, if it's an off-island hire, we do the contract. If it's an on-island hire right now, we do straight GG1 unclassified two-year probation, and after that, their performances reviewed.

THE COURT: You've gone from a problem of a dual system to now a three-part system?

The Attorney General's testimony sheds little light on the legislature's intent. From the Attorney General's description, the reference to "two years to decide whether to keep the attorney" suggests that after two years, assistant attorneys general, if retained, were supposed to be given job protection. Yet the law actually passed makes assistant attorneys general unclassified forever. Thus, even after two years, assistant attorneys general cannot appeal a dismissal or other adverse employment decision to the civil service commission. Although the two-year-probation component of section 6208.1 was discussed, no reason for its adoption was set forth.

Even assuming a sufficient legislative determination of impracticability, we do not

---

protected and thus no right to judicial review if terminated. *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). In any event, under section 6208.1, assistant attor-

neys general have no guarantee that they can appeal an adverse employment action and no established mechanism for doing so.

find such a determination supportable on this record. Haeuser presented substantial evidence that it is practicable to include assistant attorneys general within the classified system, thereby giving them a six-month rather than two-year probation period and giving nonprobationary employees the right to appeal to the civil service commission. Roland Fairfield, former Chief Assistant Attorney General, testified that on the basis of his experience at the Attorney General's Office, he felt that there was no need to eliminate the possibility of assistant attorneys general being hired as classified employees. He testified that it is not necessary for the effective operation of the Office of the Attorney General for assistant attorney general positions to be unclassified. In fact, under section 6208.1, assistant attorneys general who had been hired as classified employees prior to the enactment of section 6208.1, remain classified employees. No witnesses testified that there had been any problem with the classification of assistant attorneys general that made it impracticable to continue classifying them. The experience of the Attorney General's Office indicates that it is "practicable" to place assistant attorneys general within the classified system. In fact, under a strict definition of "practicable" as meaning "capable of being done," *see Webster's II* at 923,[4] the experience of the Attorney General's Office would seem conclusively to establish that it is practicable to include assistant attorneys general within the classified system: It has been done and is still being done; therefore, it is capable of being done. We need not insist upon such a strict definition here, however, for there has been no showing by the Government of Guam that classification of assistant attorneys general, though barely possible, was attended with such crippling drawbacks that the practice might be deemed impracticable under a more lenient definition.

Additionally, other government attorneys remain classified, including all assistant public defenders. Although it is not decisive that other government attorneys remain classified, it is probative of the practicability of classifying assistant attorneys general. *See Grossman v. Rankin*, 43 N.Y.2d 493, 402 N.Y.S.2d 373, 379, 373 N.E.2d 267, 273 (1977) ("In prior cases our review has been guided to a certain extent by reference to the manner of classification by government units having similar responsibilities."). The record reflects no material difference between assistant public defenders and assistant attorneys general to explain why the legislature could conclude that it was practicable to include assistant public defenders, but not assistant attorneys general, within the merit system. The government's brief points out that the duties of an assistant attorney general are different from the duties of an assistant public defender, who defends and represents members of the public. Although true, this does not support the conclusion that assistant attorneys general must be subject to a four-times longer probation period than assistant public defenders and be barred from appealing an adverse employment action.

The one concern clearly reflected in the record is the previous existence of pay differentials between classified assistant attorneys general and nonclassified contract assistant attorneys general. Prior to section 6208.1's enactment, the legislature would sometimes enact pay raises that would apply to all government attorneys and therefore include contract attorneys, and sometimes enact pay raises directed only to classified employees. Witnesses testified that this created disparate pay schedules among classified and unclassified government attorneys and caused turmoil in the Attorney General's Office. The disparate pay schedules were certainly a legitimate concern of the legislature, and because of them, the legislature enacted 4 Guam Code Ann. § 6208, which provides uniform pay schedules for all government attorneys-regardless of classification. Thus, for example, assistant public defenders with the

---

**4.** The dictionary contrasts the usage of "practical" and "practicable": "*Practicable* refers to something that can be put into effect. *Practical* refers to something that is also sensible and worthwhile. Thus, it might be *practicable* to transport children to school by balloon, but it would not be *practical*." *Id.* (usage note).

same amount of experience are paid the same as assistant attorneys general. 4 Guam Code Ann. § 6208. This in no way explains why *section 6208.1* was passed, however, which only applies to assistant attorneys general. Once pay was equalized among government attorneys regardless of classification, there was simply no reason to exempt assistant attorneys general from the classified system.

Neither does the existence of off-island hires provide a reason to exempt on-island assistant attorneys general from the classified system. As best we can tell from the record, there is no reason the legislature could not place off-island contract assistant attorneys general in the classified system.[5] Even if there were such a reason, it would not provide a reasonable basis for exempting noncontract attorneys from the classified system. Off-island attorneys were and are hired as assistant attorneys general pursuant to a two-year contract. Thus, although not classified, they can be protected from dismissal without cause during that two year period by virtue of their employment contract. By contrast, now that on-island attorneys general have been exempted from classification under section 6208.1, they can be fired during the first two years without cause, without any recourse. Thus, rather than making the relationship between on-island and off-island assistant attorneys general more uniform, section 6208.1 appears to have made the situation more inequitable between off-island and on-island hires.

The only testimony that arguably provides a reasonable basis for exempting assistant attorneys general from the merit system is the testimony of Donald L. Paillette, Chief Deputy Attorney General. Paillette testified that two years provides a better opportunity to evaluate the competence and performance of an attorney and that six months is too short a time to give a fair evaluation. He testified that the majority of Attorney General's offices in the United States use an unclassified or exempt system, that the ultimate decider of an assistant's competence should be the Attorney General herself, and that a civil service commission of lay people is not qualified to determine an attorney's competence.

This testimony, however, is undercut by the fact that other government attorneys in Guam are not given a two-year probation period and there is no evidence that the prior, shorter probation period was insufficient adequately to evaluate assistant attorneys general.[6] Furthermore, even after a classified employee has completed his probationary period, he may still be dismissed for cause, so there is no reason to believe that the Attorney General will be unable to terminate incompetent assistants. The record does not reflect the details of other states' attorney general offices, but in most states, there is no Constitution or Organic Act requiring a merit system. If it were not for the Organic Act, Guam would be perfectly free to classify assistant attorneys general however it wished (so long as the classification was not irrational), but because of the Organic Act, Guam is constrained to follow the merit system so far as practicable. That some states do not exempt assistant attorneys general suggests that it is in fact practicable to include them within the system. And, while it may be understandable that an employer would wish to hire and fire employees at her discretion, that is the antithesis of a merit system, which protects employees from arbitrary or political dismissal. Finally, there is no evidence in the record to support the assertion that the members of the Civil Service Commission cannot evaluate the propriety of an employee's dismissal because

---

**5.** At oral argument, counsel for the government represented that attorneys in the Public Defender's Office, including off-island hires, were all part of the classified system.

**6.** Moreover, the typical six-month probationary period for classified employees can be extended for up to twelve months upon approval of the Department of Administration. Personnel Rule 7.00 (Dep't of Admin.1979). Thus, even were assistant attorneys general to be classified employees, they could still be subject to a one-year probation period if approved by the Department of Administration.

they are not from the same profession; indeed, the Civil Service Commission hears appeals from other government attorneys as well as many other professionals. And, of course, the government is free to include attorneys on the Civil Service Commission if it wishes.

## VII

Despite the deference due the government in running its civil service system, we conclude that the government has not demonstrated a reasonable basis for exempting assistant attorneys general from the merit system. While explicit legislative findings are not required, their lack—coupled with the apparent arbitrariness of the statute—undercuts a conclusion of "impracticability." Unlike the case with general rational basis review, simply being able to posit a possible reason for the legislature's actions is not enough. The Organic Act says that a merit system *shall* be established and appointments *shall* be made in accordance with the system so far as practicable. In order to exempt a category of employees from the merit system, there must be a reasonable basis to support a legislative determination of "impracticability." Nothing in the legislative or superior court record supports such a determination. Accordingly, we conclude that section 6208.1, which exempts assistant attorneys general from the classified system, violates the Organic Act.

REVERSED and REMANDED.